# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DALE HIGGINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6594** |
| **NMI ENTERPRISES, INC., et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Defendants NMI Enterprises, Inc.[1] ("NMI"), DROR International, L.P.

("DROR"), and Nitzan Mendelbaum's ("Mendelbaum") (collectively, "Defendants") Motion to

Dismiss on the Basis of *Res Judicata* and Collateral Estoppel,[2] in which Defendants seek to have

this Court dismiss all claims against them. After considering the pending motion, the pleadings, the

memorandum in support, the opposition, the reply, the record, and the applicable law, for the

following reasons the Court will grant Defendants' motion.

## I. Background

### A. Parties and Their Relationship

Defendant NMI is a Texas corporation and general partner of DROR. Defendant DROR is

a limited liability company in the business of magazine publishing. Defendant Mendelbaum is the

president of NMI and a limited partner of DROR.[3] Defendant Laurie Felton ("Felton") was

previously an employee of *Louisiana Homes & Garden Magazine,* a magazine published by

---

[1] NMI was terminated as a party on May 13, 2011.

[2] Rec. Doc. 43.

[3] Rec. Doc. 43-1 at pp. 1, 5 n.1. The record reflects that DROR previously did business as NMI, who has been terminated as a party. In addition, Mendelbaum is later referred to as the "sole member and president" of DROR. *See id*; *see also* Rec. Doc. 50 at p. 2 ("Mr. Mendelnaum (the president and sole member of DROR)").

Plaintiffs.[4] Plaintiffs Dale Higgins ("Higgins") and Roger Smith ("Smith") are the sole members of Thundervision, LLC ("Thundervision"), which is involved in the publication of magazines, namely *Louisiana Homes & Garden Magazine*.[5] Plaintiff Wright Avenue Associates, LLC ("Wright Avenue"), is an original owner of Thundervision, and Higgins is Wright Avenue's managing partner.[6] Plaintiff Melanie Wallace ("Wallace") is an employee of *Louisiana Homes & Garden Magazine*.[7] Hereinafter all plaintiffs will be referred to collectively as "Plaintiffs."

### B. Prior Legal Actions

The above-captioned matter is not the first round of litigation many of these parties and entities have pursued against one another. DROR initially brought suit against Thundervision, Smith, Higgins, and Wright Avenue for the alleged non-payment of overdue invoices in the Twenty Fourth Judicial District Court, State of Louisiana.[8] In response, Thundervision, Smith, Higgins and Wright Avenue filed a counterclaim alleging that two issues of "Louisiana Home & Garden Magazine" printed by DROR were defective.[9] Before trial, Thundervision filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana. In bankruptcy court, Thundervision sought offset of any amount owed to DROR and its employees for their alleged

---

[4] Rec. Doc. 43-1 at p. 2.

[5] *Id.* at p. 3.

[6] Rec. Doc. 1 at pp. 1-2.

[7] Rec. Doc. 43-1 at p. 3.

[8] *Id.*

[9] *Id.*

violations of the Computer Fraud and Abuse Act[10] and the Wire Tap Act,[11] claiming that Felton provided Mendelbaum, in his capacity as a member of DROR, with access to Thundervision's business email accounts.

As a result of Thundervision's filing for bankruptcy, DROR's state court suit was automatically stayed and a temporary injunction was granted in favor of Smith, Higgins, and Wright Avenue pending trial on the merits against Thundervision in bankruptcy court, because, according to Defendants, "issues in state court ... were identical to the issues before the bankruptcy court and [] proceeding in both courts concurrently would not be in the interest of judicial economy."[12] The case proceeded before Judge Elizabeth Magner in the United States Bankruptcy Court for the Eastern District of Louisiana.[13]

On a motion for partial summary judgment, the bankruptcy court found Thundervision liable on five invoices to DROR totaling $143,728.05.[14] At trial, the parties contested one additional invoice and whether Thundervision was entitled to an offset based upon its multiple claims arising from the alleged unauthorized access of its email accounts and computers.[15] At the conclusion of trial, judgment was entered in favor of DROR concerning the disputed invoice, but that award was offset by judgments in favor of Thundervision for DROR's violations of the Computer Fraud and Abuse Act and Louisiana Civil Code Article 2315, which provides a remedy for any behavior that

---

[10]  18 U.S.C. § 1030.

[11]  18 U.S.C. § 2510.

[12]  Rec. Doc. 43-1 at pp. 3-4.

[13]  *Id.* at p. 4.

[14]  *Id.*

[15]  *Id.* at p. 5.

causes damage to another.[16] This offset was entered in favor of Thundervision for the unauthorized access of Thundervision's computers and email accounts, which Felton facilitated.[17] DROR claims that Thundervision's other claims relating to the allegations of defective issues of a magazine were "denied for want of proof."[18]

After the bankruptcy proceedings, the temporary stay against Smith, Higgins, and Wright Avenue was lifted and the state court suit resumed.[19] The state court suit, however, only addressed the remaining issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts entered into between DROR and Thundervision, and if they were therefore liable for their payment. The state court proceedings did not address any alleged unlawful access to email. DROR filed a motion for summary judgment on the issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts entered into between DROR and Thundervision, which was granted. Smith, Higgins, and Wright Avenue appealed this ruling to the Louisiana Fifth Circuit Court of Appeal.[20] DROR also filed a motion for dismissal in the state court proceeding on the basis of *res judicata*, "concerning only the personal guaranties issued by Mr. Smith, Mr. Higgins and/or Wright Avenue Associates on accounts due and payable to DROR."[21] The motion was denied.

---

[16]  *Id.*

[17]  Ex. D (opinion of bankruptcy court).

[18]  Rec. Doc 43-1 at p. 5.

[19]  *Id.* at p. 6.

[20]  *Id*; *see also* Rec. Doc. 46 at p. 5.

[21]  Rec. Doc. 50 at p. 4.

### C. Instant Lawsuit

The complaint in the action pending before this Court initially named Mendelbaum, DROR, NMI, and Felton as defendants.[22] Specifically, Plaintiffs allege that "Felton gave Mendelbaum, acting as partner of DROR and president of its general partner, NMI, Smith's e-mail password and thereafter all defendants used that password to read Smith's e-mails to and from the other plaintiffs about their business and legal matters as well as those to and from his (Smith's) attorneys [regarding the suit against Thundervision] for alleged breach of contract by DROR and NMI."[23] The action Plaintiffs refer to in the complaint is the state court proceeding that was eventually stayed until the resolution of the case pending in federal bankruptcy court.[24] Plaintiffs assert that the Defendants stole Smith's password "to facilitate a takeover of 'Louisiana Home & Garden Magazine.'"[25] Plaintiffs here seek damages pursuant to the "Computer Fraud and Abuse Act" and "The Wire Tap Act"[26] on the basis of the allegations that Defendants misappropriated Smith's email password and read his emails.[27]

On December 15, 2010, Plaintiffs filed an amended complaint, wherein they added several more defendants and incorporated by reference against the new defendants all allegations made in the first complaint.[28] Specifically, Plaintiffs added Robert D. Reuthlinger ("Reuthlinger"), Timothy

---

[22]  Rec. Doc. 1 at p. 2. NMI has subsequently been terminated as a party.

[23]  *Id.* at p. 3.

[24]  *Id.*

[25]  *Id.*

[26]  18 U.S.C. § 2510

[27]  Rec. Doc. 1 at pp. 4-5.

[28]  Rec. Doc. 9.

A. Beeson ("Beeson"), Michael D. Harris ("Harris"), all alleged to be "shareholder[s] and/or officer[s] and/or employee[s] of Today's House & Garden, Inc.," a Texas Corporation that is also added as a defendant; and Tracie A. Begnaud ("Begnaud").[29]

## II. Parties' Arguments

In the memorandum in support of the pending motion to dismiss, Defendants first allege that Plaintiffs' claims must be dismissed under the doctrine of *res judicata*.[30] Defendants argue that under the Louisiana law of *res judicata*, when a final judgment is "'in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action in those causes of action.'"[31] Defendants continue by outlining the conditions that must be met to preclude a second action under Louisiana law: "(1) the judgment [in the prior action] is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject of the first litigation."[32]

Regarding the first and second factors, Defendants assert that the United States Bankruptcy Court for the Eastern District of Louisiana issued judgments "dated September 29, 2009, and June

---

[29]  *Id.* at pp. 1-2.

[30]  Rec. Doc. 43-1 at p. 6.

[31]  *Id.* (quoting La. Rev. Stat. § 13:4231(2)).

[32]  *Id.* (citing *Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03); 843 So.2d 1049, 1053).

6

1, 2010, [that] are valid and final and no one appealed within the time delays permitted."[33] One of

the judgments rendered in favor of Thundervision was for violations of the Computer Fraud and

Abuse Act, arising from the unauthorized access of a Thundervision email account.[34]

Next, Defendants argue that "the parties to this action are substantially the same as the

parties [that were before] the Bankruptcy Court."[35] "Plaintiffs, Roger Smith, Dale Higgins and/or

Wright Avenue Associates, the non-debtor principals of Thundervision, previously brought against

DROR the exact same claims they now assert against DROR and Mr. Mendelbaum."[36] Defendants

further point out that "the only difference is that while the previous claims were brought on behalf

of Thundervision as against DROR, the instant claims are being brought by the owners of

Thundervision as against the owner of DROR."[37] Defendants claim that the addition of Melanie

Wallace as a plaintiff, "who, by her own testimony, is merely an 'administrative assistant' of

Thundervision," is improper because she has no right of action against Defendants, and that her

addition is merely a "procedural tactic" to avoid the application of *res judicata* and an attempt by

Plaintiffs to "take two bites at the apple."[38]

Regarding the fourth factor, Defendants assert that the causes of action now sought by

Plaintiffs existed at the time of the final judgment rendered in the bankruptcy proceeding.[39] On

---

[33] *Id.* at p. 7.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* (citing Ex. J, Deposition of Melanie Wallace). Wallace's right of action will be discussed in greater depth later. *See infra* Part III.D.

[39] *Id.* at p. 8.

March 22, 2006, an investigation into Felton was initiated for the alleged unauthorized access of Thundervision's business email accounts. The investigation conducted by the Louisiana Office of the Attorney General, High Technology Crime Unit, revealed that Smith's email account had been accessed by an unauthorized user.[40] Based upon these facts, Defendants claim "it cannot be disputed that the causes of action asserted by Plaintiffs for the second time in the instant suit existed at the time the final judgment in the bankruptcy proceeding was rendered in June 2010."[41]

Finally, Defendants claim that the fifth criterion is met because this lawsuit "arose out of the transaction or occurrence that was the subject matter of the proceedings before Judge Magner."[42] In the case proceeding before the bankruptcy court, Thundervision brought suit against DROR, claiming that it violated the Computer Fraud and Abuse Act, the Wire Tap Act, and Louisiana Civil Code Article 2315, for DROR's alleged unauthorized access "to the computer system, records and emails of Thundervision."[43] The final judgment included an award to Thundervision pursuant to the Computer Fraud and Abuse Act and Louisiana Civil Code Article 2315, but according to Defendants "Thundervision's remaining claims against DROR were denied for want of proof."[44] Therefore, Defendants maintain that the "claims asserted by Plaintiffs against DROR have already been adjudicated in the United States Bankruptcy Court for the Eastern District of Louisiana" and that therefore, Plaintiffs' claims should be dismissed with prejudice under the doctrine of *res judicata*.[45]

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at p. 9.

[43] *Id.* at p. 10.

[44] *Id.* at p. 11.

[45] *Id.*

In the alternative, Defendants assert that collateral estoppel bars Plaintiffs' claims if the claims are not barred under "true" *res judicata*.[46] In support of this contention, Defendants cite *Allen v. McCurry*,[47] where the United States Supreme Court stated that collateral estoppel does not require mutuality between the parties in the subsequent action. Collateral estoppel requires instead that (1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue must have been actually litigated in the federal court; and (3) the disposition of that issue must have been necessary to the outcome of the prior litigation.[48] Defendants quote the Fifth Circuit in *Wehling v. CBS*[49]: "[the] parties need not be completely identical, so long as the party against whom estoppel applies had a full and fair opportunity to litigate the issue in the previous lawsuit."[50] Further, Defendants refer to Supreme Court precedent that extends collateral estoppel not only to a party, but also to its privies.[51] According to Defendants, Mendelbaum, as president of DROR, is in privity with DROR, defendant in the previous bankruptcy case. Defendants contend that even if the parties dispute Mendelbaum's status as a privy of DROR, the issue is "ultimately irrelevant" because as long as the party against whom estoppel applies had a full and fair opportunity to litigate the issue,

---

[46] *Id.* at p. 12.

[47] 449 U.S. 90 (1980).

[48] *Am. Home Assurance Co. v. Chevron, U.S.A., Inc.*, 400 F.3d 265 (5th Cir. 2005).

[49] 721 F.2d 506 (5th Cir. 1983).

[50] *Id.* at 508.

[51] Rec. Doc. 43-1 at p. 13 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-27 (1979)).

it is barred from relitigation.[52] It is Defendants' contention that the bankruptcy court proceedings provided such a "fair and full" opportunity for Plaintiffs.[53]

Lastly, Defendants address the final element to satisfy collateral estoppel, "whether the determination of the issues were necessary to the judgment in the Bankruptcy Proceeding."[54] Defendants contend that the determinations of whether the email accounts of Thundervision and/or Smith were improperly accessed were necessary to the judgment in the prior bankruptcy judgment because those issues were critical to address the allegations against Defendants for violations of the Computer Fraud and Abuse Act, the Wire Tape Act, and Louisiana Civil Code Article 2315.[55] Defendants argue that "Plaintiffs should not be permitted to re-litigate the same issues just because they are now bringing the same actions personally as opposed [to] through their respective business entities,"[56] as corporate entities can only act through actual persons.

In opposition to the pending motion, Plaintiffs first assert that Defendants' "exceptions" for *res judicata* and collateral estoppel should be denied on procedural grounds.[57] Plaintiffs argue that "although the peremptory exception of *Res Judicata* is recognized as a means of dismissing a matter in Louisiana State courts under Code of Civil Procedure Article 927, the Federal Rules of Civil Procedure do not recognize such exceptions."[58] Furthermore, Plaintiffs claim that "while Rule 8 of

---

[52] *Id.*

[53] *Id.* at pp. 13-14.

[54] *Id.* at p. 14.

[55] *Id.*

[56] *Id.* at p. 15.

[57] Rec. Doc. 46 at p. 7.

[58] *Id.*

10

the Federal Rules of Civil Procedure allows *Res Judicata* and Estoppel to be plead as affirmative defenses, the Federal Rules of Civil procedure do not allow the pleading of *Res Judicata* and Estoppel in a motion as a lone means of dismissing a claim."[59] In this regard, Plaintiffs assert that this motion should have been brought before Defendant answered the complaint.[60]

Plaintiffs also allege that Defendants' "exceptions" should be dismissed on substantive grounds. Concerning *res judicata*, although conceding that some elements of *res judicata* have been met here, Plaintiffs contend that not all the elements necessary to invoke the doctrine *res judicata* have been met and, therefore, the doctrine is inapplicable. Regarding the first element, "Plaintiffs will concede that the Judgment in the Bankruptcy proceeding is valid and was not appealed by any of the parties."[61] In response to the second factor, the finality of the judgment, Plaintiffs also concede that "the Bankruptcy judgment is final."[62] However, Plaintiffs focus on the differences between the state court suit and the present matter, arguing that, "it is DROR and NMI that filed suit against Thundervision, (not a party to this suit), Smith, Higgins, and Wright Avenue on [the unpaid invoices]. Here, Higgins, Smith, Wallace, and Wright Avenue have filed suit against nine (9) defendants."[63] Plaintiff continues by arguing that "as some of the Plaintiffs in the 24th [Judicial District Court] action are Defendants in this matter, any final judgment which may be rendered by the State court will not provide a remedy to the Plaintiffs in *this* action. Accordingly, any final Judgment of the 24th [Judicial District Court] will not have any effect on the causes of action and

---

[59] *Id.*

[60] *Id.*

[61] *Id.* at p. 10.

[62] *Id.* at p. 11.

[63] *Id.*

remedies sought by the Plaintiffs in this action."[64]

Concerning the third element, Plaintiffs maintain that "this matter involves several other parties that were not a part of the previous suits."[65] Plaintiffs emphasize that Thundervision is not a party in this matter and that Wallace, not a party to the previous state or bankruptcy proceedings, is now a plaintiff in this matter.[66] Further, Plaintiffs argue that defendants, "Mendelbaum, Felton, Reutlinger, Beeson, Harrison, *Today's House*, and Bergnaud - have never been parties to any of the other suits previously mentioned."[67] Plaintiffs further contend that "considering *none* of the individual Plaintiffs have previously sought relief concerning (5) causes of action against these nine (9) Defendants, the DROR Defendants' *res judicata* challenge fails."[68]

In addressing the fourth prerequisite to trigger the application of *res judicata* and bar a second suit, whether the causes of action asserted in the second suit existed at the time of final judgment in the first litigation, Plaintiffs argue that "none of the individual Plaintiffs in this suit made any claims in either the Bankruptcy proceeding or the 24th [Judicial District Court] action. As such, since they have not previously asserted any causes of action, they should not be barred from filing their first suit."[69]

Finally, in discussing the fifth requirement for the application of *res judicata*, whether the causes asserted in the second action arose out of the transaction and occurrence that was subject

---

[64] *Id.* at p. 12.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at p. 14 (emphasis in original).

[69] *Id.* at pp. 14-15.

matter of the first litigation, Plaintiffs echo their previous argument that "individual plaintiffs in this suit have not made claims in any of the other lawsuits."[70] For these reasons, Plaintiffs assert that *res judicata* does not bar the present action.

Similarly, Plaintiffs argue that collateral estoppel is not triggered in this action.[71] First among Plaintiffs' arguments is that according to the Louisiana law of collateral estoppel, "the doctrine of collateral estoppel [only applies] to issues *actually litigated* in the prior proceeding."[72] To this point, Plaintiffs maintain that "the plaintiffs in this matter have never brought five causes of action against any of the Defendants in any court."[73] Furthermore, they claim that the plaintiffs in this action, Higgins, Smith, Wallace, and Wright Avenue, "[h]ave never asserted ***any*** causes of action in <u>any</u> courts until they filed <u>this</u> action."[74]

Plaintiffs also address federal collateral estoppel.[75] Regarding the first element, that a final decision on the merits was rendered, Plaintiffs argue that "the Bankruptcy trial only involved recouping Thundervision's losses from hacking. The individual Plaintiffs here did not assert any of their personal losses in the Bankruptcy proceedings."[76] Concerning the second element, whether this same fact issue was actually litigated in the prior action, Plaintiffs make a similar argument: "none

---

[70] *Id.* at p. 15.

[71] *Id.* at p. 16.

[72] *Id.* (emphasis in original) (citing *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415 (5th Cir. 1995)).

[73] *Id.*

[74] *Id.* at p. 17 (emphasis in original).

[75] Federal collateral estoppel requires that (1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue must have been actually litigated in the federal court; and (3) the disposition of that issue must have been necessary to the outcome of the prior litigation. *Am. Home*, 400 F.3d at 265.

[76] Rec. Doc. 46 at p. 17.

of the Plaintiffs have asserted any causes of action or have sought any remedies until they filed suit with this Honorable Court."[77] Again, much the same argument is made in relation to the third element, that the decision was necessary to the outcome of the prior litigation: "since this litigation involves different parties, different causes of action, and different remedies, the awards in the previous actions cannot provide these Plaintiffs with relief in this action."[78]

In reply, Defendants first address Plaintiffs' challenge that Defendants' affirmative defenses of *res judicata* and collateral estoppel fail on procedural grounds.[79] Defendants note that the defense of *res judicata* was "specifically asserted in DROR and Mendelbaum's Answer and Defenses, and [*res judicata*] is not one of the seven [defenses] that must be brought prior to filing responsive pleadings."[80] Next, Defendants address Plaintiffs' claims that collateral estoppel was not properly pled and was therefore waived. Defendants quote Federal Rule of Civil Procedure 12(b): "no defense or objection is waived by joining it with one or more defenses or objections in a responsive pleading or in a motion."[81] Defendants contend that, "[a]s the defenses of *res judicata* and collateral estoppel are often interrelated, DROR avers that said latter defense is joined with DROR's pleaded defense of *res judicata* and has not been waived."[82] Defendants cite no authority to support this proposition.

---

[77] *Id.* at p. 18.

[78] *Id.* at pp. 18-19.

[79] Rec. Doc. 50 at p. 1.

[80] *Id.* at p. 2; *see also* Defendants' Exceptions, Defenses, and Answer, Rec. Doc. 33.

[81] Rec. Doc. 50 at p. 2.

[82] *Id.*

Defendants reiterate their assertion that the substantive elements to trigger *res judicata* are satisfied.[83] Defendants also contend that the state court case on appeal is of no moment and that Plaintiffs should not "be allowed to pursue the instant action against DROR and Mr. Mendelbaum on the basis of a [s]tate [c]ourt [j]udgment on appeal and concerning only the personal guaranties issued by Mr. Smith, Mr. Higgins and/or Wright Avenue Associates on accounts due and payable to DROR, which have nothing to do with the five causes of action asserted against DROR and Mr. Mendlbaum in the instant case."[84] Defendants' invocation of *res judicata* here is based on the bankrutpcy court proceeding. Defendants distinguish the state court's denial of their exception for *res judicata* on the basis that:

> [T]he claims asserted against Mr. Smith, Mr. Higgins and Wright Avenue Associates by DROR were claims based on guaranties issued by said parties on the accounts of Thundervision as claimed in the Bankruptcy Proceeding. A denial of *res judicata* in the state action is distinguished from the instant action in which DROR and Mr. Mendelbaum seek claim preclusion for the claims of Thundervision asserted and adjudicated in the Bankruptcy Proceeding, but which exact claims are now asserting individually based on the exact same facts and evidence presented in the [prior] Bankruptcy Court.[85]

Defendants emphasize that the only difference "is that while the previous claims [were] brought on behalf of Thundervision as against DROR, the instant claims are being brought by the owners of Thundervision as against DROR and its sole owner."[86]

Next, Defendants address Plaintiffs' argument that the present case includes five new causes of action: (1) damages for unauthorized access to Thundervision's computer system and business

---

[83] *Id.* at pp. 3-4.

[84] *Id.* at p. 4.

[85] *Id.*

[86] *Id.*

email; (2) damages for a violation of the Computer Fraud and Abuse Act; (3) damages arising from the Wire Tap Act; (4) damages for invasion of privacy; and (5) damages under Louisiana Civil Code Article 2315.[87] Defendants claim that after Thundervision declared bankruptcy during the state court proceeding, "in adversary proceedings before [the bankruptcy] court, Thundervision claimed an offset alleging damages resulting from unauthorized access to Thundervision's computer system and business e-mail(s), damages for negligence, breach of contract, breach of express and implied warranties, conspiracy, violation of the Computer Fraud and Abuse Act, the Wire Tap Act, and for damages under Louisiana Civil Code art. 2315."[88] In Defendants' words, "unquestionably, these are the exact same claims Plaintiffs now assert against DROR and Mr. Mendelbaum, whereby the doctrine of *res judicata* must be applied."[89]

## III. Law and Analysis

### A. Waiver of Res Judicata and Collateral Estoppel on Procedural Grounds

Federal Rule of Civil Procedure 8 classifies *res judicata* and collateral estoppel as two distinct affirmative defenses,[90] and "all affirmative defenses must be specifically pleaded in the answer or in an amended answer permitted under Fed. R. Civ. P. 15(a), or be deemed waived."[91] In Defendants' answer, it specifically pleads the "Exception of *Res Judicata*."[92] Regardless, the

---

[87]  *Id.* (citing Rec. Doc. 46 at pp. 3-4).

[88]  *Id.* at p. 6. (internal citations omitted).

[89]  *Id.*

[90]  Fed. R. Civ. P. 8(c)(1).

[91]  *Morgan Guaranty Trust Co. of New York v. Blum*, 649 F.2d 342, 345 (5th Cir. Unit B July, 1981).

[92]  Rec. Doc. 33 at p. 8, ¶ 16.

Fifth Circuit has stated that it will consider *res judicata*, even if never pled: "'[W]here all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to the dispositive facts, simply because neither party has seen fit to invite our attention to the issue by technically correct and exact pleadings.'"[93] Here, not only was *res judicata* specifically pled in the answer, but all the facts concerning the prior proceeding are before the Court and uncontroverted, which would allow for the consideration of the applicability of *res judicata* even if the doctrine had never been pled. Therefore, the doctrine of *res judicata* is not barred on procedural grounds.

Plaintiffs have also argued that the affirmative defense of collateral estoppel was not specifically pled in the answer and, thus, is waived. "Collateral estoppel is an affirmative defense under FED. R. CIV. P. 8(c) which if not pleaded is considered waived."[94] In Defendants' answer to the complaint and answer to the amended complaint, "collateral estoppel" is not specifically raised.[95] As mentioned above, Rule 8 explicitly lists *res judicata* and collateral estoppel as two independent affirmative defenses, undercutting Defendants' argument that pleading *res judicata* impliedly implicates collateral estoppel as well. However, when collateral estoppel is "raised in the trial court in a manner that does not result in unfair surprise, [] technical failure to comply precisely with Rule 8(c) is not fatal."[96] In *American Casualty Co. v. United Southern Bank*,[97] the Fifth Circuit

---

[93] *Russel v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992) (quoting *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A Mar., 1981)).

[94] *Am. Casualty Co. v. United S. Bank*, 950 F.2d 250, 253 (5th Cir. 1992).

[95] *See* Rec. Doc. 33 (answer to complaint); *see also* Rec. Doc. 34 (answer to amended complaint).

[96] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).

[97] 950 F.2d 250 (5th Cir. 1992).

held that a defense of collateral estoppel was properly before the court even though it had not been affirmatively pled.[98] In that case, the Fifth Circuit reasoned that because the previous state court judgment, which created the collateral estoppel issue, had been "sufficiently raised in the trial court," that the plaintiff "was not prejudiced in its ability to respond."[99] Here, although collateral estoppel was not specifically pled by Defendants in accordance with Rule 8, the prior bankruptcy and state court proceedings were initially raised by Plaintiffs in the complaint,[100] and therefore, Plaintiffs cannot claim that they have been "prejudiced in their ability to respond." For these reasons, the issue of collateral estoppel is also properly before this Court.

### B. *Applicability of Res Judicata*

As a preliminary matter, this Court must determine the preclusive effect that applies to the bankruptcy proceeding upon this matter. Both parties analyze the issue of *res judicata* and collateral estoppel under Louisiana law. For support, Defendants cite *Semtek International Inc. v. Lockheed Martin Corp.*,[101] where the Supreme Court stated that "the preclusive effect of a judgment entered by a federal court exercising diversity jurisdiction is a question of federal common law, but that in general, is to be determined by reference to the law of the state whose substantive law applied in that diversity action."[102] Under this logic, Defendants argue that the preclusive effect of Judge Magner's opinion in the bankruptcy proceeding is controlled by Louisiana *res judicata* law.

---

[98]   *Id.* at 253.

[99]   *Id.*

[100]   Rec. Doc. 1 at p. 3, ¶ 5.

[101]   531 U.S. 497 (2001).

[102]   *Id.*

However, this argument overlooks the fact that neither of the adversary proceedings consolidated before Judge Magner were based in diversity. Rather, Thundervision removed the state court proceeding concerning "open accounts" pursuant to bankruptcy jurisdiction under 28 U.S.C. § 1334, not under 28 U.S.C. § 1332 diversity jurisdiction. More importantly, the jurisdictional basis for Thundervision's claims against DROR – which DROR and Mendelbaum now seek to prevent Plaintiffs from raising here– were based on Section 1334(b) as well. Further, many of the claims brought by Thundervision against DROR specifically alleged violations of federal law, and as such, would have supported federal question jurisdiction.[103]

Thus, because the prior proceeding that Defendants argue bars the claims against them in this case on the basis of *res judicata* and/or collateral estoppel was a federal proceeding not based in diversity, *Semtek* is inapplicable. Rather, the Court will apply the general rule that "the preclusive effect of a federal-court judgment is determined by federal common law."[104]

In *Vines v. University of Louisiana at Monroe*,[105] the Fifth Circuit outlined the four requirements necessary to trigger *res judicata* under federal law and bar a subsequent suit:

> First, the parties in the later action must be identical to (or at least in privity with) the parties in the prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.[106]

---

[103] DROR and Mendelbaum do not appear to rely on the state court judgment to support their claim of *res judicata*, nor should they. The state court judgment only addressed the issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts entered into between DROR and Thundervision. The state court proceedings did not concern whether anyone's rights were violated by any unlawful access to email.

[104] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

[105] 398 F.3d 700 (5th Cir. 2005).

[106] *Id.* at 704-05.

The parties dispute whether the first element, identity of the parties, is satisfied. Defendants argue that the only difference is that although Thundervision sued DROR in the first suit, now the principals of Thundervision bring suit against DROR and Mendelbaum, DROR's president. However, as expressed in *Vines*, parties that are privies of one another will also satisfy this factor.[107] With regard to *res judicata*, the Fifth Circuit recognizes three general instances in which privity will be found: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit."[108] In *Drier v. Tarpon Oil Company*,[109] the Fifth Circuit found privity where the party in the second suit was "president and major stockholder of the corporation [that was a party in the previous suit] and he admitted in deposition that he made the 'ultimate decisions.'"[110]

Here, Plaintiffs Higgins and Smith are the sole members of Thundervision, LLC,[111] and are therefore clearly privies of that entity. Plaintiff Wright Avenue was an original owner of Thundervision, and Higgins is a managing partner of Wright Avenue.[112] Higgins, a member of Thundervision and a managing partner of Wright Avenue, was in a position to advance Wright

---

[107]  *Id.*

[108]  *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1267 (5th Cir. 1990).

[109]  522 F.2d 199 (5th Cir. 1975).

[110]  *Id.* at 200.

[111]  Rec. Doc. 43-1 at p. 3.

[112]  Rec. Doc. 1 at pp. 1-2.

Avenue's interest in the first suit as well as his own, and therefore both are in privity with Thundervision, a party in the previous action.

DROR was a named party in both the bankruptcy and state court proceedings, and therefore DROR clearly meets the first requirement to trigger *res judicata*. Mendelbaum was never a named party in the prior suits but is president and sole member of DROR. A defendant who was not a party in the prior litigation may also assert *res judicata* if he is in privity with the previously named defendant.[113] Privity "requires us to look at the surrounding circumstances to determine whether claim preclusion is justified."[114] The Fifth Circuit has recognized that there is no definitive criteria by which to establish if privity exists:

> Privity is not a requirement that we can satisfy through inquiry; rather the existence of 'privity' is the inquiry satisfied. In short, parties which are sufficiently related to merit the application of claim preclusion are in privity... Our analysis is particularly fact-based.[115]

However, the Fifth Circuit has stated that privity "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion."[116]

In *Lubrizol Corp. v. Exxon Corp.*,[117] the Fifth Circuit declined to make any "broad pronouncements about the doctrines of mutuality and privity" but recognized that privity for a defendant is often found and a "second bite at the apple" is denied where:

---

[113] *Russell*, 962 F.2d at 1173 (citing *Nevada v. United States*, 463 U.S. 110, 129 (1983)).

[114] *Id.*

[115] *Id.* at 1174.

[116] *Sw. Airlines Co. v. Tx. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977).

[117] 571 F.2d 1279 (5th Cir. 1989).

a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first transaction; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiffs altered suit continued to seek essentially similar relief.[118]

Considering these principles articulated by the Fifth Circuit, this Court finds that Mendelbaum is a privy of DROR under these circumstances. Smith, Higgins, and Wright Avenue seek "essentially the same relief" in this action as in the prior actions arising from the same occurrence, the alleged hacking of Thundervision's business email. Smith, Higgins, and Wright Avenue have already had an opportunity to raise all of the claims asserted here. Moreover, Mendelbaum, as sole member and president of DROR, has a sufficiently "special relationship" to establish privity and satisfy this element of *res judicata*.

However, Plaintiff Melanie Wallace, who has only been identified as an employee of Thundervision and whose interest in this suit is unclear, was not a party to the bankruptcy proceeding. Based upon the lack of information about her, here, the Court has insufficient information to determine whether she is in privity with Thundervision. Therefore, because the Court cannot analyze this factor in regard to Wallace, it is reluctant to preclude Wallace's cause of action or bar a suit against DROR and Mendelbaum pursuant to the principles of *res judicata*, if such claims actually exist.[119] The Court's analysis will only consider the existence of the remaining elements of *res judicata* as to the claims of plaintiffs Higgins, Smith, and Wright Avenue.

---

[118] *Id.* at 1288. While Plaintiffs in this action did not initiate the prior state court action, they later declared bankruptcy in the Eastern District of Louisiana and removed the pending state court suit to the federal bankruptcy court. In this sense, considering the issues decided in the bankruptcy court, Plaintiffs chose the original forum.

[119] Whether Wallace has a right of action will be discussed later. *See infra* Part III.D.

As previously noted, Plaintiffs have conceded the second and third elements of *res judicata* -- that the prior decision was rendered by a court of competent jurisdiction and that it was a final judgment on the merits[120] – and therefore, these elements do not warrant further discussion. However, Plaintiffs dispute the fourth factor – whether the same claim or cause of action is implicated in the prior and present suit. Plaintiffs do not address this element directly but rather repeat that "individual plaintiffs in this suit have not made claims in any other lawsuits."[121] However, as was established above, Higgins, Smith, and Wright Avenue are privies of Thundervision, who brought a cause of action in the bankruptcy proceeding. The Fifth Circuit follows the transactional test to determine if two suits involve the same claim for *res judicata* purposes.[122] "The critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts."[123] *Res judicata* will bar actions that were previously brought or could have been brought in the first suit.[124] Therefore, even if Plaintiffs' complaint in this case alleges a different theory for relief than Thundervision did in the first suit, if the complaint implicates the same common nucleus of operative facts, the fourth element of *res judicata* will nonetheless be satisfied.

In Plaintiffs' complaint in this matter, they allege that Felton gave Smith's password to several of the other defendants, in violation of he Computer Fraud and Abuse Act and the Wire Tap

---

[120]   Rec. Doc. 46 at pp. 10-11.

[121]   *Id.* at p. 15.

[122]   *In re Matter of Howe*, 913 F.2d 1138, 1114 (5th Cir. 1990).

[123]   *Id.*

[124]   *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981).

Act.[125] In this same complaint, Plaintiffs admit that this alleged activity was the basis of the state court action that was later consolidated into the bankruptcy proceeding in the Eastern District of Louisiana.[126] This is further confirmed by the opinion of the bankruptcy court itself, which clearly establishes that the claims and underlying factual allegations arise from the same common nucleus of operative facts at issue here.[127] Therefore, the present case is sufficiently related to the prior action and satisfies the final factor to trigger *res judicata*. As all four factors to trigger *res judicata* are satisfied between these defendants, DROR and Mendelbaum, and plaintiffs Smith, Higgins, and Wright Avenue, *res judicata* bars all actions asserted here against DROR and Mendelbaum by the aforementioned plaintiffs.

## C. Applicability of Collateral Estoppel

As all claims asserted against DROR and Mendelbaum are barred under the doctrine of *res judicata*, except, perhaps, those brought by Wallace, the Court need only consider the applicability of collateral estoppel to Wallace's claims. As stated above, collateral estoppel, or issue preclusion, will apply when "(1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue must have been actually litigated in the federal court; and (3) the disposition of that issue must have been necessary to the outcome of the prior litigation."[128] However, this Court need not analyze these factors here, noting that "while complete identity of all parties is not required, the party against whom collateral estoppel would be applied generally must either have been a party, or a privy to the

---

[125]   Rec. Doc. 1 at pp. 3-4.

[126]   *Id.* at p. 3, ¶ 5.

[127]   Rec. Doc. 43, Ex. D.

[128]   *Am. Home*, 400 F.3d at 265.

party, in the prior litigation."[129] Wallace was not a party, and the Court has insufficient facts to determine whether she is a privy to a party who participated in the prior litigation. Therefore the Court cannot determine whether her claims are subject to collateral estoppel.

### D. Wallace's Entitlement to Relief

In this matter, it is unclear the exact nature of Wallace's right to relief or reason for inclusion in this lawsuit. In the initial complaint, Plaintiffs' allegations only reveal that Wallace "was a resident of Ascension Parish, Louisiana," and "is an employee of the [*Louisiana Homes & Garden Magazine*].[130] Plaintiffs complaint arises from the allegation that "Felton gave Mendelbaum, acting as a limited partner of DROR and president of general partner, NMI, ***Smith's*** e-mail password and thereafter all defendants used that password to read ***Smith's*** e-mails to and from the other plaintiffs about their business and legal matters as well as those to and from his (Smith's) attorneys in the petition for Thundervision's alleged breach of contract by DROR and NMI .... The purpose of Felton's [sic] giving Smith's password to defendants was to facilitate defendants' takeover of 'Louisiana Homes & Garden Magazine."[131] The amended complaint, which realleges the allegations in the initial complaint, provides no further information on why Wallace may have a claim, except for the vague and conclusory statement that "[t]he plaintiffs have suffered damages as a direct result of all the defendants' invasion of the plaintiffs' privacy as the result of the defendants' unauthorized access to their computer system, records and emails, including private business matters and

---

[129] *Vines*, 398 F.3d at 705.

[130] Rec. Doc. 1 at ¶¶ 2, 4.

[131] *Id.* at ¶¶ 5-6 (emphasis added).

strategies and privileged communications between plaintiffs and their attorneys."[132] Nowhere is it explained how Wallace's privacy may have been invaded, because Plaintiffs only allege that Smith's email account was accessed without authorization.

Defendants have directly challenged Wallace's right of action in this matter,[133] and Plaintiffs fail to sufficiently address this argument in opposition to the pending motion. Plaintiffs only response is the broad statement that "Many relevant facts have been discovered by the filing of the two other suits. Factual information learned from the other suits made it necessary to include Wallace in this suit."[134] Wallace by her own words is only an "office clerk" for *Louisiana Homes & Garden*, a magazine operated by Thundervision.[135] A plaintiff's obligation to provide the grounds for his "entitlement to relief" requires more than "labels and conclusions." "Factual allegations must be enough to raise a right to relief above the speculative level."[136] "'[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"[137] Federal Rule of Civil Procedure 8(a)(2) requires a pleader to provide a "plain statement" showing that the "pleader is entitled to relief." Failure to do so will result in a Court dismissing the pleader's claims for failure to state a claim upon which relief may be granted.[138] The allegations in the original and amended complaint rely solely on conclusions and fail to provide

---

[132] Rec. Doc. 9 at ¶ 7.

[133] *See* Rec. Doc. 43-1 at p. 7 ("Melanie Wallace, who, by her own testimony is merely an 'administrative assistant' of Thundervision, has no right of action whatsoever.").

[134] Rec. Doc. 46 at p. 15.

[135] Rec Doc. 43, Ex. J. at p. 2.

[136] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[137] *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).

[138] *Id.*

adequate factual allegations to make Wallace's right to relief apparent. Moreover, in opposition to the pending motion Plaintiffs provide no further explanation of why Wallace is entitled to relief. Therefore, this Court agrees with Defendants and finds that Wallace has not stated facts sufficient to support a finding that she has a right of action or entitlement to relief here.

## IV. Conclusion

Considering that the claims against Defendants DROR and Mendelbaum by Plaintiffs Smith, Higgins, and Wright Avenue satisfy the elements of *res judicata*, the current claims against Defendants by Higgins, Smith, and Wright Avenue are barred. Therefore, the pending motion is granted in this regard and all claims by Smith, Higgins, and Wright Avenue against DROR and Mendelbaum are dismissed with prejudice. However, because Wallace did not participate in the prior action, nor has sufficient information been provided to the Court to determine whether she is in privity with a party who did, with regard to her, the pending motion is denied on that ground. However, the record currently is inadequate to establish that Wallace has a right of action or has stated a claim upon which relief may be granted. Plaintiffs, in responding to the motion, had a full opportunity to address this issue and failed to provide additional facts or information, and so, the claims filed by Wallace are dismissed for failure to state a claim upon which relief may be granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendants DROR and Mendelbaum's Motion to Dismiss on the Basis of *Res Judicata* and Collateral Estoppel[139] is **GRANTED** and such claims are **DISMISSED WITH PREJUDICE**.

---

[139] Rec. Doc. 43.

**IT IS FURTHER ORDERED** that Plaintiff Wallace's claims are **DISMISSED WITH**

**PREJUDICE** for failure to state a claim upon which relief may be granted.

**NEW ORLEANS, LOUISIANA**, this <u>30th</u> day of November, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**