# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DALE HIGGINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6594** |
| **NMI ENTERPRISES, INC, et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Defendant Laurie Felton's ("Felton") Motion to Dismiss,[1] wherein she seeks to dismiss all claims made against her on the grounds of *res judicata*, collateral estoppel, lack of service, prescription, and expiration of time periods allowed under the relevant statutes of limitations. After considering the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A. Parties and Their Relationship

Defendant NMI is a Texas corporation and general partner of DROR. Defendant DROR is a limited liability company in the business of magazine publishing. Defendant Mendelbaum is the president of NMI and a limited partner of DROR.[2] Defendant Laurie Felton ("Felton") was previously an employee of *Louisiana Homes & Garden Magazine,* a magazine published by the plantiffs.[3] Plaintiffs Dale Higgins ("Higgins") and Roger Smith ("Smith") are the sole members of Thundervision, LLC ("Thundervision"), which is involved in the publication of magazines, namely

---

[1]  Rec. Doc. 71.

[2]  Rec. Doc. 43-1 at pp. 1, 5 n.1. The record reflects that DROR previously did business as NMI, who has been terminated as a party. In addition, Mendelbaum is later referred to as the "sole member and president" of DROR. *See id*; *see also* Rec. Doc. 50 at p. 2 ("Mr. Mendelnaum (the president and sole member of DROR)"). Defendants DROR and Mendelbaum have since been dismissed from this suit on the basis of *res judicata*. Rec. Doc. 80.

[3]  Rec. Doc. 43-1 at p. 2.

*Louisiana Homes & Garden Magazine*.[4] Plaintiff Wright Avenue Associates, LLC ("Wright Avenue"), is an original owner of Thundervision, and Higgins is Wright Avenue's managing partner.[5] Plaintiff Melanie Wallace ("Wallace") is an employee of *Louisiana Homes & Garden Magazine*.[6] Hereinafter all plaintiffs will be referred to collectively as "Plaintiffs."

### B. Prior Legal Actions

The above-captioned matter is not the first round of litigation many of these parties and entities have pursued against one another. DROR initially brought suit against Thundervision, Smith, Higgins, and Wright Avenue for the alleged non-payment of overdue invoices in the Twenty Fourth Judicial District Court, State of Louisiana.[7] In response, Thundervision, Smith, Higgins and Wright Avenue filed a counterclaim alleging that two issues of *Louisiana Home & Garden Magazine* printed by DROR were defective.[8] Before trial, Thundervision filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana. In bankruptcy court, Thundervision sought offset of any amount owed to DROR and its employees for their alleged violations of the Computer Fraud and Abuse Act[9] and the Wire Tap Act,[10] claiming that Felton provided Mendelbaum, in his capacity as a member of DROR, with access to Thundervision's

---

[4]  *Id.* at p. 3.

[5]  Rec. Doc. 1 at pp. 1-2.

[6]  Rec. Doc. 43-1 at p. 3. Plaintiff Wallace's claims have subsequently been dismissed for failure to state a claim. Rec. Doc. 80 at p. 25.

[7]  *Id.*

[8]  *Id.*

[9]  18 U.S.C. § 1030.

[10]  18 U.S.C. § 2510.

business email accounts. However, while Felton's activities were at issue in the prior action, she was not a named party in the state court or federal bankruptcy suits.[11]

As a result of Thundervision's filing for bankruptcy, DROR's state court suit was automatically stayed and a temporary injunction was granted in favor of Smith, Higgins, and Wright Avenue pending trial on the merits against Thundervision in bankruptcy court, because, according to DROR and Mendlebaum, "issues in state court ... were identical to the issues before the bankruptcy court and [] proceeding in both courts concurrently would not be in the interest of judicial economy."[12] The case proceeded before Judge Elizabeth Magner in the United States Bankruptcy Court for the Eastern District of Louisiana.[13]

On a motion for partial summary judgment, the bankruptcy court found Thundervision liable on five invoices to DROR totaling $143,728.05.[14] At trial, the parties contested one additional invoice and whether Thundervision was entitled to an offset based upon its multiple claims arising from the alleged unauthorized access of its email accounts and computers.[15] At the conclusion of trial, judgment was entered in favor of DROR concerning the disputed invoice, but that award was offset by judgments in favor of Thundervision for DROR's violations of the Computer Fraud and Abuse Act and Louisiana Civil Code Article 2315, which provides a remedy for any behavior that

---

[11] Rec. Doc. 73 at p. 5 ("Felton has never been a party to any of the [p]rior [p]roceedings.") (emphasis in original).

[12] Rec. Doc. 43-1 at pp. 3-4.

[13] *Id.* at p. 4.

[14] *Id.*

[15] *Id.* at p. 5.

causes damage to another.[16] This offset was entered in favor of Thundervision for the unauthorized access of Thundervision's computers and email accounts, which Felton facilitated.[17] DROR claims that Thundervision's other claims relating to the allegations of defective issues of a magazine were "denied for want of proof."[18]

After the bankruptcy proceedings, the temporary stay against Smith, Higgins, and Wright Avenue was lifted and the state court suit resumed.[19] The state court suit, however, only addressed the remaining issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts entered into between DROR and Thundervision, and if they were therefore liable for their payment. The state court proceedings did not address any alleged unlawful access to email. DROR filed a motion for summary judgment on the issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts entered into between DROR and Thundervision, which was granted. Smith, Higgins, and Wright Avenue appealed this ruling to the Louisiana Fifth Circuit Court of Appeal.[20] DROR also filed a motion for dismissal in the state court proceeding on the basis of *res judicata*, "concerning only the personal guaranties issued by Mr. Smith, Mr. Higgins and/or Wright Avenue Associates on accounts due and payable to DROR."[21] The motion was denied.

---

[16]  *Id.*

[17]  Ex. D (opinion of bankruptcy court).

[18]  Rec. Doc 43-1 at p. 5.

[19]  *Id.* at p. 6.

[20]  *Id*; *see also* Rec. Doc. 46 at p. 5.

[21]  Rec. Doc. 50 at p. 4.

### C. Instant Lawsuit

The complaint in the action pending before this Court initially named Mendelbaum, DROR, NMI, and Felton as defendants.[22] Specifically, Plaintiffs allege that "Felton gave Mendelbaum, acting as partner of DROR and president of its general partner, NMI, Smith's e-mail password and thereafter all defendants used that password to read Smith's e-mails to and from the other plaintiffs about their business and legal matters as well as those to and from his (Smith's) attorneys [regarding the suit against Thundervision] for alleged breach of contract by DROR and NMI."[23] The action Plaintiffs refer to in the complaint is the state court proceeding that was eventually stayed until the resolution of the case pending in federal bankruptcy court.[24] Plaintiffs assert that the defendants stole Smith's password "to facilitate a takeover of 'Louisiana Home & Garden Magazine.'"[25] Plaintiffs here seek damages pursuant to the Computer Fraud and Abuse Act, The Wire Tap Act, and under Louisiana Civil Code article 2315 for invasion of privacy, on the basis of the allegations that the defendants misappropriated Smith's email password and read his emails.[26]

On December 15, 2010, Plaintiffs filed an amended complaint, wherein they added several more defendants and incorporated by reference against the new defendants all allegations made in the first complaint.[27] Specifically, Plaintiffs added Robert D. Reuthlinger ("Reuthlinger"), Timothy A. Beeson ("Beeson"), Michael D. Harris ("Harris"), all alleged to be "shareholder[s] and/or

---

[22] Rec. Doc. 1 at p. 2. NMI has subsequently been terminated as a party.

[23] *Id.* at p. 3.

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 1 at pp. 4-5; Rec. Doc. 9 at p. 3.

[27] Rec. Doc. 9.

officer[s] and/or employee[s] of Today's House & Garden, Inc.," a Texas Corporation that is also

added as a defendant; and Tracie A. Begnaud ("Begnaud").[28]

## II. Felton's Motion to Dismiss

Felton filed the pending motion on June 26, 2012, claiming that Plaintiffs' claims against her

should be dismissed on the grounds of *res judicata*, collateral estoppel, lack of service, prescription,

and the expiration of time periods allowed under the relevant statutes of limitations.[29] Plaintiffs filed

an opposition on July 10, 2012.[30] Upon leave of Court, Felton filed a reply on July, 18, 2012.[31]

### A. Res Judicata

To trigger *res judicata* under federal law and bar a subsequent suit:

> First, the parties in the later action must be identical to (or at least in privity with) the
> parties in the prior action. Second, the judgment in the prior action must have
> been rendered by a court of competent jurisdiction. Third, the prior action must have
> concluded with a final judgment on the merits. Fourth, the same claim or cause of
> action must be involved in both suits.[32]

In this Court's Order dated November 30, 2012,[33] the Court addressed Defendants DROR

and Mendelbaum's Motion to Dismiss,[34] wherein DROR and Mendelbaum argued that *res judicata*

barred all claims made against them in this action. For the reasons explained in that Order, the Court

---

[28]  *Id.* at pp. 1-2.

[29]  Rec. Doc. 71.

[30]  Rec. Doc. 73.

[31]  Rec. Doc. 79.

[32]  *Vines v. Univ. of La. At Monroe*, 398 F.3d 700, 704-05 (5th Cir. 2008).

[33]  Rec. Doc. 80.

[34]  Rec. Doc. 43

found that the prior bankruptcy action arose from the same common nucleus of operative facts at issue in this matter, so as to trigger the application of *res judicata*; this Court also noted that DROR had been a party in the previous bankruptcy action and Mendlebaum, as sole owner and partner in DROR, was in privity with DROR, thereby making them identical parties to the prior bankruptcy action.[35] The Court also found that through privity, Plaintiffs here were identical parties to those in the bankruptcy action as well, and therefore, *res judicata* barred all claims made here against Defendants DROR and Mendelbaum.[36]

As such, the only difference in the *res judicata* analysis here concerns Felton's connection to the prior bankruptcy proceeding. Unlike DROR, Felton was not a party in the prior bankruptcy action. Moreover, unlike Mendelbaum, Felton is not in privity with any entity that was a party to that suit, as she was only an employee of *Louisiana Homes & Garden Magazine*. Felton nonetheless argues that "the parties are the same," [37] despite the fact that she was not a party to the previous actions or in privity with any of those parties. Felton's circumstances are distinguishable from that of DROR and Mendelbaum because the claims against them, which have now been dismissed, were already brought against them or a party they were in privity with by the same parties or parties that are in privity with participants who brought claims against them in the prior bankruptcy action. Claims arising from this same common nucleus of operative facts have never been brought against Felton or a party she is in privity with by Plaintiffs, and therefore, *res judicata* will not bar the claims asserted here against Felton.

---

[35]   Rec. Doc. 80 at pp. 18-22.

[36]   In the prior Order, that all Plaintiffs except for Wallace were identical through privity. Wallace's claims were dismissed for failure to state a claim. Rec. Doc. 80 at pp. 25-27.

[37]   Rec. Doc. 71-1 at p. 4.

**B. Collateral Estoppel**

*1. Parties' Arguments*

In support of the pending motion, Felton argues that if *res judicata* does not bar the current claims against her, collateral estoppel precludes relitigation of the issues here.[38] Felton claims that Plaintiffs are "attempting to litigate an issue that has already been previously litigated and resolved in a valid court determination."[39] Felton argues that here all three elements to trigger collateral estoppel are met: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action.[40]

Before analyzing the first factor, Felton, relying on the Fifth Circuit in *Wehling v. CBS*,[41] notes that collateral estoppel does not require mutuality between the parties as long as the party against whom estoppel applies had a full and fair opportunity to litigate the issue in the previous lawsuit.[42] Regarding the first factor, Felton maintains that Plaintiffs had such a full and fair opportunity to litigate the issues in the prior bankruptcy proceeding, when they asserted causes of action under the Computer Fraud and Abuse Act and the Wiretap Act arising from the accusations that Felton stole and circulated a Thundervision email password.[43] In relation to the second factor,

---

[38] Rec. Doc. 71-1 at p. 5 (citing *Allen v. McCurry*, 449 U.S. 90 (1980)).

[39] *Id.* at p. 6.

[40] *Id.* (citing *Dresser v. Ohio Hempery, Inc.*, No. 98-2425, 2011 WL 2416595 (E.D. La. June 13, 2011)).

[41] 721 F.2d 506, 508 (5th Cir. 1983).

[42] Rec. Doc. 71-1 at p. 6.

[43] *Id.* at pp. 6-7.

Felton contends that because identical claims were brought in the bankruptcy action, they were "critical and necessary" to the bankruptcy court's determinations on those issues, and therefore, "Plaintiffs should not be allowed to re-litigate the same issues that have previously been decided."[44]

In opposition, Plaintiffs argue that "[t]his action is not barred by the doctrine of collateral estoppel," because under the Louisiana law of collateral estoppel, the parties and the issue must be identical.[45] Plaintiffs distinguish *Wehling* on the grounds that it does not analyze Louisiana collateral estoppel.[46]

In addressing the second and third factors, Plaintiffs aver that the issues in the present matter have not actually been litigated previously because Higgins, Smith, Walalce, and Wright Avenue "have yet to assert[] <u>any</u> causes of action in <u>any</u> courts until they filed <u>this</u> action."[47] Moreover, Plaintiffs claim that collateral estoppel "does not preclude litigation of issues unless both facts and the legal standard used to assess them are the same in both proceedings."[48] Plaintiffs maintain that the prior bankruptcy suit "only involved the corporation Thundervision's action against DROR International and NMI Enterprises, other business entities. In short, the Bankruptcy Proceedings only involved the recouping of Thundervision's losses from hacking. The issue of the individual Plaintiffs['] personal losses has not been litigated, and the issue of the losses of these Plaintiffs certainly was not essential to the resulting judgment in the Bankruptcy Proceeding or the 24[th] JDC

---

[44] *Id.* at p. 7.

[45] Rec. Doc. 73 at p. 9.

[46] *Id.* at pp. 9-10.

[47] *Id.* at p. 12 (emphasis in original).

[48] *Id.* (citing *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415 (5th Cir. 1995)).

Proceeding."[49] Plaintiffs also argue that the parties in the present action here and the prior action are different, and therefore Plaintiffs never had a full and fair opportunity to address their claims.

*2. Analysis*

In this matter, the Court has already explained why federal common law governs the preclusive effect of the prior federal bankruptcy action.[50] In short, the bankruptcy court did not exercise jurisdiction under diversity, but rather 28 U.S.C. § 1334 bankruptcy jurisdiction. Therefore, the bankruptcy court was not sitting in diversity and the preclusive effect of its judgment is not dictated by Louisiana state law. Therefore, the Court will consider the applicability of collateral estoppel under federal principles, which applies the doctrine when: "(1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue must have been actually litigated in the federal court; and (3) the disposition of that issue must have been necessary to the outcome of the prior litigation."[51]

Before addressing the elements to trigger collateral estoppel, Felton and Plaintiffs dispute whether mutuality of the parties is necessary to invoke this doctrine. However, federal law is clear that federal collateral estoppel does not require mutuality: "[The United States Supreme Court] in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law limits. It has done so by abandoning the requirement of mutuality of parties."[52] However, the party against whom collateral estoppel applies must have had a full and fair opportunity to litigate the

---

[49]  *Id.* at pp. 12-13.

[50]  Rec. Doc. 80 at pp. 18-19.

[51]  *Am. Home Assurance Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 (5th Cir. 2005).

[52]  *United States v. Mendoza*, 464 U.S. 154, 158 (1984) (internal citations omitted).

issue in an earlier case.[53] This Court has previously held that through privity the Plaintiffs in this action are the same as those in the prior bankruptcy proceeding for the purposes of *res judicata* and collateral estoppel.[54] Therefore, Plaintiffs had a full and fair opportunity in the bankruptcy action to litigate these issues.

Plaintiffs do not dispute that the first element of collateral estoppel – that the prior bankruptcy judgment was a valid and final decision on the merits.[55] Regarding the second factor, Plaintiffs distinguish the claims here from the prior bankruptcy proceeding; Plaintiffs maintain that the prior action only sought corporate losses, while the instant action seeks personal losses. Plaintiffs misconstrue this element of collateral estoppel. "Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."[56] Therefore, it is not important that Plaintiffs have articulated a different theory for relief here; Plaintiffs' causes of action here and in the prior bankruptcy action arose from Felton illegally misappropriating an email password and communicating it to Mendelbaum. After an adversary proceeding, the bankruptcy court made factual determinations and a judgment regarding the activity of Felton and others for these actions.[57] These issues have therefore been previously litigated, and the second element of collateral estoppel is satisfied. As these actions formed the basis of Plaintiffs' claims in the previous suit, they were necessary to that judgment, and therefore, the

---

[53] *Allen*, 449 U.S. 95.

[54] Rec. Doc. 80 at pp. 19-20.

[55] *See* Rec. Doc. 73 at p. 6.

[56] *Mendoza*, 464 U.S. at 158.

[57] Rec. Doc. 43; Exs. G-1, G-2 (judgment of bankruptcy court).

third factor is satisfied as well.

While the elements necessary to trigger collateral estoppel have been met, it is difficult for this Court to see why Felton wishes to use the doctrine here. Unlike *res judicata*, which bars a subsequent suit, collateral estoppel, or issue preclusion, simply bars the relitigation of facts and legal questions in a subsequent action. "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between parties, whether on the same or a different claim.'"[58] Therefore, even though the same factual and legal issues have been previously litigated, absent a showing that these determinations excuse Felton from all liability here, the claims asserted against Felton by Plaintiffs are not extinguished. In neither the memorandum in support nor reply to the pending motion does Felton assert that factual or legal determinations in the prior bankruptcy action foreclose the possibility of Felton's liability here. Therefore, even though collateral estoppel may be invoked by Felton in this matter, the doctrine will not dismiss the claims against her unless she is able to demonstrate that the prior determination of these issues prevents a finding of liability on her part here.

### C. Lack of Service

#### 1. Parties' Arguments

In the alternative, Felton also argues that the claims against her should be dismissed without prejudice because she was not served within 120 days after the complaint was filed pursuant to Federal Rule of Civil Procedure 4(m).[59] Felton argues that the complaint in the instant matter was

---

[58] *Vines*, 398 F.3d at 705 (quoting Restatement (Second) of Judgments § 27 (1991)).

[59] Rec. Doc. 71-1 at p. 7.

filed on September 29, 2009, and on March 24, 2011 the Clerk of Court for this Court issued summons to Plaintiffs for service upon Felton; however, Felton claims that she was not served with summons until January 17, 2012.[60] Felton further claims that "[w]hile Plaintiffs were at all times fully aware of Felton's whereabouts, service was not perfected until well past the 120 days prescribed in the Federal Rules of Civil Procedure for service to be made."[61] In addition, Felton argues that under Louisiana Code of Civil Procedure article 1201(C), Plaintiffs' claims under Louisiana Civil Code article 2315 should have been served upon Felton within 90 days.[62] Under Louisiana jurisprudence, failure to serve a defendant within 90 days results in a dismissal without prejudice, but absent bad faith, prescription is interrupted if the original suit was timely filed.[63]

In opposition, Plaintiffs emphasize the last sentence of Rule 4(m), which states: "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[64] Plaintiffs argue that they attempted to perfect service well within the 120 day period, but that "Felton originally refused to accept service, requiring Plaintiffs to engage a special process server, who also had difficulty perfecting service on Felton."[65] As such, Plaintiffs claim that they exercised reasonable and diligent efforts to serve process and "should not be punished for their inability to perfect service when that inability was due solely to Felton's own refusal to accept

---

[60] *Id.*

[61] *Id.*

[62] *Id.* at p. 8.

[63] *Bordelon v. Med. Ctr. of Baton Rouge*, 2003-0202 (La. 10/21/03); 871 So.2d 1075, 1079-80.

[64] Rec. Doc. 73 at p. 14.

[65] *Id.* (citing Ex. 1, Affidavit of William D. Aaron, III attesting to the failed attempts to perfect service on Felton). The Court notes that William Aaron is not a special process server, but rather an attorney for Plaintiffs.

13

service and attempts to evade same."[66] Plaintiffs flatly, and correctly, reject Felton's argument that their state law claim is governed by Louisiana Civil Procedure; in federal court, the Federal Rules of Civil Procedure apply.[67] Therefore, Plaintiffs aver that Federal Rule of Civil Procedure 4(m) is applicable, which allows for an extension of the time for service upon a showing of good cause. Here, Plaintiffs argue that Felton's refusal of service provides such cause.

### 2. Analysis

Neither party disputes that service of Felton occurred outside the 120 day time period. The Fifth Circuit has acknowledged that dismissal will not occur if the plaintiff can show "good cause" for why service occurred outside of the allotted time period.[68] "If good cause is present, the district court *must* extend time for service. If good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service."[69] This Court has held that a defendant's evasion of service constitutes good cause for failure of service under Rule 4(m).[70]

While Felton agues that Plaintiffs knew of her whereabouts at all times, Plaintiffs have argued that good cause exists for the delay in service based upon Felton's refusal of service and later evasion. Moreover, Plaintiffs provide the affidavit of William D. Aaron, Plaintiffs' attorney, who claims in an affidavit that he attempted to serve Felton numerous times, but "no one answered the

---

[66] *Id.* at p. 15.

[67] *Id.*; *see also Hanna v. Plumer*, 380 U.S. 460 (1965) (holding that service in a diversity case is made in the manner prescribed by the Federal Rules of Civil Procedure).

[68] *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985).

[69] *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) (emphasis in original).

[70] *Fradella v. Abbot Labs.*, No. 99-1301, 1999 WL 461819 (E.D. La. Jult 2, 1999) (citing *Ruiz Varela v. Sanchez Velez*, 814 F.2d 821 (1st Cir. 1987)).

door."[71] Felton does not respond to this claim, and therefore this Court finds that Plaintiffs have demonstrated good cause for the untimely service, and will not dismiss their claims against Felton under Rule 4(m) for untimely service.

### D. Prescription

#### 1. Parties' Arguments

As another ground for dismissing Plaintiffs' claims, Felton argues that the claim under Louisiana Civil Code article 2315 has a one year liberative prescriptive period, which commences from the day of injury or when damage is sustained.[72] Felton avers that the complaint in this matter was filed on September 29, 2009, and the amended complaint was filed on December 15, 2010, which added the Article 2315 claims. However, Felton argues that Plaintiffs were aware of their damages on March 21, 2007 "when Roger Smith [a plaintiff in this action] filed a Citizen's Complaint with the Louisiana Office of the Attorney General in which he levied identical allegations contained herein against Felton."[73]

In opposition, Plaintiffs refute that their Article 2315 claim has prescribed, and argue: "In November of 2008, Nitzan Mendelbaum admitted in his deposition to having continuing contact with Felton. It is therefore reasonable to believe that Felton and Mendelbaum were continuing to invade the privacy of Plaintiffs at least up to that point. Therefore, as the complaint was filed on

---

[71] Rec. Doc. 73-1; Ex. 1.

[72] Rec. Doc. 71-1 at p. 8 (citing La. C.C. art. 3492).

[73] *Id.*

September 29, 2009, this cause of action is not barred by the one year prescriptive period applicable to a La. Civil Code article 2315 claim."[74]

In reply, Felton responds that before the bankruptcy court, Plaintiffs testified that they have implemented safety measures to protect their computer system from intrusion, and therefore may not now assert that Felton is a continuing threat.[75] However, Felton does not state when Plaintiffs made these assertions or cite to any part of the record in the bankruptcy proceeding so that the Court may verify this claim. Felton also argues that the bankruptcy court awarded Thundervision, plaintiff in that action and privy of Plaintiffs, $8,700 to repair and protect its computer system.[76] Moreover, Felton claims that Plaintiffs have stated previously that there has been no subsequent unauthorized access to their computer system "since protective measures were taken and passwords changed."[77] Again, Felton does not allege the dates of these assertions or specify a place in the record where they may be found.[78]

   *2. Analysis*

A delictual obligation arises from the "intentional or negligent causing of damages" to another in the absence of a contract.[79] The parties do not dispute that the allegations relevant to Article 2315 for invasion of privacy are appropriately considered delictual. Louisiana Code of Civil

---

[74] Rec. Doc. 73 at pp. 16-17 (citing Ex. 3, deposition of Mendelbaum).

[75] Rec. Doc. 79 at p. 3.

[76] *Id.*; *see also* Rec. Doc. 43, Ex. G-1 (judgment of bankruptcy court).

[77] *Id.*

[78] While not specifically identified by Felton, the Court notes that Plaintiffs have filed an exhibit which is a portion of an Investigative Memorandum from the Louisiana Department of Justice. Dated October 2, 2007, the memorandum states that Smith reported that since switching Thundervision's information to a new server and changing email passwords, no further unauthorized access has occurred. Rec. Doc. 73; Ex. 2.

[79] *Hostetler v. Gary & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 2 Cir. 1988).

Procedure article 3492 governs delictual actions and states: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

In refuting the applicability of prescription, Plaintiffs do not directly deny Felton's allegation that they had knowledge of the violation and damage in March of 2007, but claim that because Felton and Mendelbaum were in contact in 2008, "it is reasonable to believe  [they] continued to invade the privacy of Plaintiffs."[80] In fact, in refuting that their federal claims are no longer actionable,[81] Plaintiffs state that "the damage and violation were not actually discovered by Plaintiffs until October 2, 2007, when Roger Smith met with a Department of Justice Agent to discuss the findings of their investigation."[82] However, the allegations of Plaintiffs do not allege actionable activity under Article 2315 by Felton or Mendelbaum later than 2007. This Court will not decline to apply the relevant prescriptive period based upon the mere possibility of later wrongdoing that Plaintiffs neither allege nor provide any evidence to substantiate. Plaintiffs concede that they had knowledge by at least October 2, 2007 – over a year from when Plaintiffs filed the complaint in this matter on September 29, 2009. Therefore, this Court dismisses Plaintiffs' claims under Article 2315, as they have prescribed.

---

[80]  Rec. Doc. 73 at p. 17. While Plaintiffs do not expressly allege they are the victims of a "continuing tort," the Court notes that their pleadings would not satisfy the applicable standard to stall the commencement of prescription. "[A] continuing tort occurs only so long as both the tortious conduct and damages continue." *In re Med. Review Panel Proceeding Vaidyanathan*, 98-0289 (La. App. 4 Cir. 09/23/98); 719 So.2d 604, 609. Prescription will not commence until the tortious conduct has ceased. *Id.* To implicate a continuing tort "plaintiffs must allege both continuos action and continuos damages." *Id.* Nowhere in the initial complaint or amended complaint do Plaintiffs allege any tortious activity in addition to that which was addressed in the prior bankruptcy proceeding in 2009, where Plaintiffs raised the some allegations. *See* Rec. Doc. 1 (initial complaint); Rec. Doc. 9 (amended complaint).

[81]  *See infra* Part III.F.

[82]  Rec. Doc. 73 at p. 16.

### F. Statute of Limitation on Federal Claims

*1. Parties' Arguments*

Similarly, Felton argues that Plaintiffs' federal causes of action under the Computer Fraud and Abuse Act and The Wiretap Act are no longer actionable because the statute of limitations periods have run.[83] Specifically, Felton argues the Computer Fraud and Abuse Act requires that all actions be brought within two years of the date of the act complained of or of the date of discovery of the damage.[84] The Wire Tap Act imposes a two year period to bring actions upon the first reasonable opportunity the claimant has to discover the violation.[85] Felton echoes her argument made in relation to prescription to aver that these claims are no longer actionable, charging Plaintiffs with knowledge of the alleged violations and their damages by March 21, 2007, when Plaintiffs filed a Citizen's Complaint.[86]

In opposition, Plaintiffs contend that while they "suspected Felton had been engaging in the unauthorized acts in March of 2007, the damage and violation were not actually discovered by Plaintiffs until October 2, 2007, when Roger Smith met with a Department of Justice Agent to discuss the findings of their investigation."[87]

*2. Analysis*

---

[83] Rec. Doc. 71-1 at p. 8.

[84] *Id.*

[85] *Id.* at pp. 8-10.

[86] *Id.* at p. 9.

[87] Rec. Doc. 73 at p. 16.

18

The Computer Fraud and Abuse Act imposes a two year statute of limitations period that runs from "the date of the act complained of or the date of the discovery of the damage."[88] "Damage " is defined as "any impairment to the integrity or availability of data, a program, a system, or information."[89] Felton charges Plaintiffs with knowledge on March 21, 2007, when Roger Smith filed a Citizen's Complaint with the Louisiana Office of the Attorney General and made "identical allegations" as alleged here. Plaintiffs contend while they suspected Felton of wrongdoing at the time they filed the Citizen's Complaint – specifically illegally accessing their computer system and revealing an email password – Plaintiffs did not actually discover the violations or damages until October 2, 2007, when they met with the Department of Justice and discussed the investigation that resulted from the Citizen's Complaint.

In *Quantlab Technologies Ltd. (BVI) v. Godlevsky,*[90] the Eastern District of Texas contemplated the information necessary to establish knowledge and trigger the running of the statute of limitations for the Computer Fraud and Abuse Act. In the court's analysis of this specific statute, it relied on the Fifth Circuit in *Jones v. Alcoa, Inc,*[91] which states that, in general, the statute of limitations "begins when facts that would support a cause of action are or should be apparent."[92] In *Quantlab*, the court declined to charge the plaintiffs with knowledge of the violation or damages at the time when they filed another complaint against the same defendant. The court reasoned that the first complaint:

---

[88]  18 U.S.C. § 1030(g).

[89]  18 U.S.C. § 1030(e)(8)

[90]  719 F.Supp. 2d 766 (S.D. Tex. 2010).

[91]  339 F.3d 359 (5th Cir. 2003).

[92]  *Id.* at 366 (internal quotations omitted).

> allege[d] only that [the plaintiff] was aware of threats by [the defendant] to reveal proprietary information. Because that complaint d[id] not state the source or nature of the proprietary information at issue in that case, and because the alleged conduct was different from that alleged in this case, the Court concludes that that complaint does not establish [plaintiff]'s awareness of an unauthorized access into its computer system at any particular time. As a result, the Court f[ound] no basis in the pleadings to conclude that the statute of limitations had run before suit was filed"[93]

Unlike the first complaint in *Quantlab*, here, Felton argues that the Citizen's Complaint actually alleged the same behavior that Plaintiffs argue in this case is in violation of the Computer Fraud and Abuse Act and Wire Tap Act. Unfortunately, neither party has attached a copy of the Citizen's Complaint so that the Court may review it here. However, in opposition to the pending motion, Plaintiffs do not challenge Felton's assertion that this was the basis of the Citizen's Complaint; rather, Plaintiffs argue that they only knew of their damage after the investigation that resulted from the Citizen's Complaint. This Court finds Plaintiffs' argument unpersuasive. First, it is undeniable that the "act complained of" – Felton misappropriating an email password – occurred over two years before the filing of this complaint; Plaintiffs admit they suspected Felton of wrongdoing when they submitted the Citizen's Complaint on March 21, 2007, and these suspicions were corroborated by the investigation. However, to make specific allegations and suspect Felton, Plaintiffs must have also had some knowledge of the "impairment to the integrity" of their data that they suffered as a result of the breach of their computer system. It is unreasonable for Plaintiffs to claim that they only became aware of any damage after the Department of Justice investigation, when it was their Citizen's Complaint that triggered that investigation and they admit they suspected Felton the whole time. As such, the Court finds that Plaintiffs had knowledge of facts to support

---

[93] 719 F.Supp 2d at 775.

their cause of action by at least March 21, 2007, when the Citizen's Complaint was filed, and the statute of limitations period began to run at that time. The complaint in this matter was filed on September 29, 2009, more than two years after the filing of the Citizen's Complaint. Therefore, Plaintiffs' claims under the Computer Fraud and Abuse Act are no longer actionable and these claims are dismissed as filed beyond the statute of limitations period.

Under the Wire Tap Act, a plaintiff may commence an action "no later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[94] In *Pringle v. Schleuter*,[95] the Fifth Circuit stated that, "The limitation period begins to run once the plaintiff has enough notice as would lead a reasonable person to either sue or launch an investigation." In *Pringle*, the Fifth Circuit affirmed a district court after it granted a defendant's motion for summary judgment on the basis that the statute of limitations had run. The plaintiffs had received notice of recording devices in their office over two years prior to filing their action. On appeal, the plaintiffs argued that when they knew or should have known of the intercepted communications was a material issue of fact.[96] The Fifth Circuit rejected this argument: "The statute of limitations does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it."[97] The Fifth Circuit held that the statute of limitations began to run when the recording devices were discovered.[98]

---

[94] 28 U.S.C. § 2520(e).

[95] 388 Fed. App'x. 449, 450 (5th Cir. 2010) (per curiam) (citing *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2003)).

[96] *Id.*

[97] *Id.*

[98] *Id.*

Above, the Court found that Plaintiffs had knowledge of the alleged violations and their damages by at least March 21, 2007, but also notes that Plaintiffs' Citizen's Complaint actually launched the investigation into this matter. Therefore, Plaintiffs had "enough notice as would lead a reasonable person to either sue or launch an investigation," which the Fifth Circuit has recognized begins the running of the statute of limitations under the Wire Tap Act. Again, Plaintiffs filed their Citizen's Complaint on March 21, 2007, and they filed the complaint in this action on September 29, 2009 – more than two years later. As such, Plaintiffs' claims under the Wire Tap Act are also no longer actionable.

### IV. Conclusion

Assuming all of the facts alleged by Plaintiffs as true, this Court finds that all claims against Felton have either prescribed or the statute of limitations periods have run, and so, the Court will grant the pending motion and dismiss all claims made here against Felton. While upon a motion to dismiss a district court must assume all plaintiff's factual pleadings as true, a plaintiff still must plead enough facts to state a claim that is plausible on its face.[99] "Factual allegations must be enough to raise a right to relief above the speculative level."[100]

In an attempt to avoid the prescription of their state law claim, Plaintiffs merely opine that because Felton and Mendelbaum were in contact in 2008, "it is reasonable to believe [they] continued to invade the privacy of Plaintiffs."[101] However, such an accusation fails to raise a claim past the speculative level that Plaintiffs suffered tortious damage during this time period, and

---

[99] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[100] *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007).

[101] Rec. Doc. 73 at p. 17.

therefore have a cause of action that had not prescribed before the filing of this matter.[102]

Plaintiffs also argue that the statute of limitations periods on their federal claims have not expired because they only had knowledge of a violation or damage to themselves after meeting with the Department of Justice following an investigation that was initiated by their Citizen's Complaint. However, under relevant precedent, the Citizen's Complaint, which was made more than two years prior to filing the complaint in this action, establishes that Plaintiffs had sufficient information to trigger the statute of limitations periods for both the Computer Fraud and Abuse Act and the Wire Tap Act. Accordingly,

**IT IS HEREBY ORDERED** that Felton's Motion to Dismiss[103] is **GRANTED** and all claims made against her here are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  2nd  day of January, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[102] In fact, Plaintiffs have attached as an exhibit to their opposition an Investigative Memorandum from the Louisiana Department of Justice. Dated October 2, 2007, the memorandum states that Smith reported that since previously switching Thundervision's information to a new server and changing email passwords, no further unauthorized access has occurred. Rec. Doc. 73; Ex. 2.

[103] Rec. Doc. 71.

23