UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DALE HIGGINS, et al.                                         CIVIL ACTION

VERSUS                                                       NO.  09-6594

NMI ENTERPRISES, INC., et al.                               SECTION: "G"(4)

## ORDER AND REASONS

Before the Court are the parties' memoranda regarding the timeliness of the plaintiffs' claims, which this Court ordered after it indicated that it was inclined to grant summary judgment independent of a motion pursuant to Federal Rule of Civil Procedure 56(f)(3).[1] After considering the complaint, the amended complaint, the parties' memoranda, the record, and the applicable law, the Court will grant summary judgment in favor of all defendants dismissing all of plaintiffs' causes of action under Louisiana Civil Code article 2315 as prescribed, and will dismiss Plaintiff Roger Smith's claims against all defendants under the Computer Fraud and Abuse Act and the Wire Tap Act, as their statutes of limitations have expired as relates to him; however, the Court will not grant summary judgment to dismiss the remaining plaintiffs' causes of action under the Computer Fraud and Abuse Act and the Wire Tap Act as expired.

## I. Background

### A. Parties and Their Relationship

Defendant NMI Enterprises, Inc. is a Texas corporation and general partner of DROR International, L.P. ("DROR"). Defendant DROR is a limited liability company in the business of magazine publishing. Defendant Nitzan Mendelbaum ("Mendelbaum") is the president of NMI and

---

[1]  Rec. Doc. 110.

a limited partner of DROR.[2] Defendant Laurie Felton ("Felton") was previously an employee of *Louisiana Homes & Garden Magazine,* a magazine published by the plaintiffs.[3] Plaintiffs Dale Higgins ("Higgins") and Roger Smith ("Smith") are the sole members of Thundervision, LLC ("Thundervision"), which is involved in the publication of magazines, namely *Louisiana Homes & Garden Magazine.*[4] Plaintiff Wright Avenue Associates, LLC ("Wright Avenue"), is an original owner of Thundervision, and Higgins is Wright Avenue's managing partner.[5] Plaintiff Melanie Wallace ("Wallace") was an employee of *Louisiana Homes & Garden Magazine.*[6] Hereinafter, all plaintiffs will be referred to collectively as "Plaintiffs."

### B. Prior Legal Actions

The above-captioned matter is not the first round of litigation many of these parties and entities have pursued against one another. DROR initially brought suit against Thundervision, Smith, Higgins, and Wright Avenue for the alleged non-payment of overdue invoices in the Twenty Fourth Judicial District Court, State of Louisiana.[7] In response, Thundervision, Smith, Higgins and Wright Avenue filed a counterclaim alleging that two issues of *Louisiana Home & Garden Magazine* printed by DROR were defective.[8] Before trial, Thundervision filed for bankruptcy in the

---

[2]  Rec. Doc. 43-1 at pp. 1, 5 n.1. The record reflects that DROR previously did business as NMI, who has been terminated as a party. In addition, Mendelbaum is later referred to as the "sole member and president" of DROR. *See id*; *see also* Rec. Doc. 50 at p. 2 ("Mr. Mendelnaum (the president and sole member of DROR)").

[3]  Rec. Doc. 43-1 at p. 2.

[4]  *Id.* at p. 3.

[5]  Rec. Doc. 1 at pp. 1-2.

[6]  Rec. Doc. 43-1 at p. 3.

[7]  *Id.*

[8]  *Id.*

United States Bankruptcy Court for the Eastern District of Louisiana. In bankruptcy court, Thundervision sought offset of any amount owed to DROR and its employees for their alleged violations of the Computer Fraud and Abuse Act[9] and the Wire Tap Act,[10] claiming that Felton provided Mendelbaum, in his capacity as a member of DROR, with access to Thundervision's business email accounts. However, while Felton's activities were at issue in the prior action, she was not a named party in the state court or federal bankruptcy suits.[11]

As a result of Thundervision's filing for bankruptcy, DROR's state court suit was automatically stayed and a temporary injunction was granted in favor of Smith, Higgins, and Wright Avenue pending trial on the merits against Thundervision in bankruptcy court, because, according to DROR and Mendlebaum, "issues in state court ... were identical to the issues before the bankruptcy court and [] proceeding in both courts concurrently would not be in the interest of judicial economy."[12] The case proceeded before Judge Elizabeth Magner in the United States Bankruptcy Court for the Eastern District of Louisiana.[13]

On a motion for partial summary judgment, the bankruptcy court found Thundervision liable on five invoices to DROR totaling $143,728.05.[14] At trial, the parties contested one additional invoice and whether Thundervision was entitled to an offset based upon its multiple claims arising

---

[9] 18 U.S.C. § 1030.

[10] 18 U.S.C. § 2510.

[11] Rec. Doc. 73 at p. 5 ("Felton has <u>never</u> been a party to <u>any</u> of the [p]rior [p]roceedings.") (emphasis in original).

[12] Rec. Doc. 43-1 at pp. 3-4.

[13] *Id.* at p. 4.

[14] *Id.*

from the alleged unauthorized access of its email accounts and computers.[15] At the conclusion of

trial, judgment was entered in favor of DROR concerning the remaining disputed invoice, but that

award was offset by judgments in favor of Thundervision for DROR's violations of the Computer

Fraud and Abuse Act and Louisiana Civil Code Article 2315, which provides a remedy for any

behavior that causes damage to another.[16] This offset was entered in favor of Thundervision for the

unauthorized access of Thundervision's computers and email accounts, which Felton facilitated.[17]

DROR claims that Thundervision's other claims relating to the allegations of defective issues of a

magazine were "denied for want of proof."[18]

After the bankruptcy proceedings, the temporary stay against Smith, Higgins, and Wright

Avenue was lifted and the state court suit resumed.[19] The state court suit, however, only addressed

the remaining issue of whether Smith, Higgins, and Wright Avenue were guarantors of the contracts

entered into between DROR and Thundervision, and if they were therefore liable for their payment.

The state court proceedings did not address any alleged unlawful access to email. DROR filed a

motion for summary judgment on the issue of whether Smith, Higgins, and Wright Avenue were

guarantors of the contracts entered into between DROR and Thundervision, which was granted.

Smith, Higgins, and Wright Avenue appealed this ruling to the Louisiana Fifth Circuit Court of

Appeal.[20] DROR also filed a motion for dismissal in the state court proceeding on the basis of *res*

---

[15]  *Id.* at p. 5.

[16]  *Id.*

[17]  Ex. D (opinion of bankruptcy court).

[18]  Rec. Doc 43-1 at p. 5.

[19]  *Id.* at p. 6.

[20]  *Id*; *see also* Rec. Doc. 46 at p. 5.

*judicata*, "concerning only the personal guaranties issued by Mr. Smith, Mr. Higgins and/or Wright Avenue Associates on accounts due and payable to DROR."[21] The motion was denied.

### C. Instant Lawsuit

#### 1. Factual Allegations

The complaint in the action pending before this Court was filed on September 29, 2009, and initially named Mendelbaum, DROR, NMI, and Felton as defendants.[22] This action was originally allotted to Judge Jay C. Zainey, Section "A." Plaintiffs allege that "Felton gave Mendelbaum, acting as partner of DROR and president of its general partner, NMI, Smith's e-mail password and thereafter all defendants used that password to read Smith's e-mails to and from the other plaintiffs about their business and legal matters as well as those to and from his (Smith's) attorneys [regarding the suit against Thundervision] for alleged breach of contract by DROR and NMI."[23] Within the complaint, Plaintiffs refer to the state court proceeding that was eventually stayed until the resolution of the case pending in federal bankruptcy court.[24] Plaintiffs here assert that the defendants stole Smith's password "to facilitate a takeover of 'Louisiana Home & Garden Magazine.'"[25] In their initial complaint filed before this Court, Plaintiffs sought damages pursuant to the Computer Fraud and Abuse Act and the Wire Tap Act.[26]

---

[21]  Rec. Doc. 50 at p. 4.

[22]  Rec. Doc. 1 at p. 2. NMI has subsequently been terminated as a party.

[23]  *Id.* at p. 3.

[24]  *Id.*

[25]  *Id.*

[26]  Rec. Doc. 1 at pp. 4-5.

On December 15, 2010, Plaintiffs filed an amended complaint before this Court, wherein they added several more defendants and incorporated by reference against the new defendants all allegations made in the first complaint.[27] Specifically, Plaintiffs added Robert D. Reuthlinger ("Reuthlinger"), Timothy A. Beeson ("Beeson"), Michael D. Harris ("Harris"), all alleged to be "shareholder[s] and/or officer[s] and/or employee[s] of Today's House & Garden, Inc.," a Texas Corporation that is also added as a defendant; and Tracie A. Begnaud ("Begnaud").[28] Plaintiffs also added a third cause of action under Louisiana Civil Code article 2315 for "invasion of privacy," on the basis of the allegations that the defendants misappropriated Smith's email password and read his emails.[29] On October 7, 2011, this action was reassigned to Section "G" as part of a new docket.[30]

### 2. Procedural Background

On November 30, 2012, the Court granted Defendants Mendelbaum and DROR's motion to dismiss them from this lawsuit; specifically, the Court found that the claims of Smith, Higgins, and Wright Avenue were barred by *res judicata*, and Wallace's claims were subject to dismissal because she failed to meet her pleading requirements and demonstrate her entitlement to relief.[31] Plaintiffs filed a motion for reconsideration and/or new trial regarding this issue.[32]

---

[27]   Rec. Doc. 9.

[28]   *Id.* at pp. 1-2.

[29]   *Id.* at p. 3.

[30]   Rec. Doc. 45.

[31]   Rec. Doc. 80.

[32]   Rec. Doc. 85.

On January 2, 2013, the Court also granted Felton's motion to dismiss,[33] finding that based on a Citizen's Complaint filed by Smith which demonstrated his knowledge of the alleged wrongdoing by the defendants, Plaintiffs were on notice of their causes of action at such a time that when they filed their initial complaint in this action, all relevant statutes of limitations and prescriptive periods had expired.[34] While Begnaud had previously filed two separate motions for summary judgment to dismiss her from this action,[35] based on this order, Begnaud filed a third motion seeking her dismissal from this action on these grounds.[36] Plaintiffs also filed a motion asking for reconsideration of this Court's Order and Reasons dismissing the claims against Felton.[37]

On June 25, 2013, this Court entered an order granting reconsideration on its order granting Felton's motion to dismiss, because the order was based on the Citizen's Complaint, a matter outside the pleadings.[38] However, the Court noted that none of Felton's factual contentions regarding the contents of the Citizen's Complaint filed by Smith appeared to be in dispute. Therefore, pursuant to Rule 56(f)(3), the Court provided notice to the parties of its intention to consider summary judgment on its own, and set a schedule for the parties to file memoranda on the issue.[39] Moreover, the Court acknowledged that if Felton's claims regarding the statutes of limitations and prescriptive periods were correct, this would have implications on the claims against all defendants. As such, in the

---

[33] Rec. Doc. 71.

[34] Rec. Doc. 86.

[35] Rec. Doc. Nos. 83, 84.

[36] Rec. Doc. 88.

[37] Rec. Doc. 100.

[38] Rec. Doc. 110 at p. 2 (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

[39] *Id.* at pp. 2-3.

interest of judicial economy, the Court denied without prejudice all pending dispositive motions filed by the defendants and all motions for reconsideration filed by Plaintiffs, with leave to reurge these motions if the Court did not dismiss this case after addressing the issues raised by the Citizen's Complaint.[40] On July 24, 2013, Plaintiffs filed a memorandum on this issue.[41] On August 7, 2013, Felton filed her memorandum.[42] No other defendant filed a memorandum.

## II. Parties' Arguments

### A. Plaintiffs' Memorandum

Plaintiffs concede that on March 21, 2007, "Smith filed a Citizens' Complaint with the Louisiana Department of Justice Investigation Division because he believed someone had infiltrated Thundervision's proprietary information," and that he "suspected that it might have been Felton."[43] However, Plaintiffs argue that it was only on October 2, 2007 that the state opened an investigation and an agent met with Smith and informed him that "one of the subpoenas served to Comcast [C]ommunications returned with the address of DROR."[44] Further, Plaintiffs claim that as a result of the infiltration of Thundervision's proprietary information, it became defunct and was forced into Chapter 7 bankruptcy on September 9, 2011.[45] Plaintiffs further note that between February 2011

---

[40] *Id.* at p. 4.

[41] Rec. Doc. 111.

[42] Rec. Doc. 112.

[43] Rec. Doc. 111 at p. 2.

[44] *Id.*

[45] *Id.* at p. 3.

and May 2011, Smith, Higgins, and Wallace ceased receiving income from Thundervision as employees because of its defunct status.[46]

Regarding their claims under Louisiana Civil Code article 2315, Plaintiffs contend that this Court must recognize that the claims here are brought by individual plaintiffs, not on behalf of Thundervision, and therefore the Citizen's Complaint is "irrelevant."[47] Plaintiffs claim that the "flaw" in the Court's prior analysis dismissing this claim is that it "concluded that because [Plaintiffs] purportedly had knowledge of the email hacking as a result of the Citizen's Complaint" on March 21, 2007, more than a year had passed to file their complaint, their claims were prescribed. However, they argue that the fact that Smith had knowledge of this does not have implications on the causes of action of these individual parties.[48] Instead, Plaintiffs aver, the Court should focus on the day of injury or damage sustained, which is when Thundervision became defunct in 2011 and they ceased receiving income from Thundervision, because that is actually the basis upon which they have brought their Article 2315 claims.[49] Under this theory, Plaintiffs acknowledge that "perhaps their [Article] 2315 claims were premature when they were initially filed [on September 29, 2009], which is again disputed, but they certainly are not premature now and they cannot have prescribed because the [Article] 2315 claim was filed in 2009."[50]

---

[46] *Id.*

[47] *Id.* at p. 6.

[48] *Id.*

[49] *Id.* at p. 7.

[50] *Id.*

Regarding their claim under the Computer Fraud and Abuse Act ("CFAA"), Plaintiffs note that such a cause of action is subject to a two-year statute of limitations that begins to run from the date of the discovery of the damage.[51] Plaintiffs argue:

> In initially granting Felton's Motion to Dismiss based on prescription in connection with the Computer Fraud claim under 18 U.S.C. [§] 1030, the Court accepted as true the proposition that [Thundervision] had knowledge of the hacking of the email by virtue of the Citizen's Complaint filed on March 21, 2007. It dismissed [Plainitffs]' argument that the purpose of the Citizen Complaint was to obtain identification of who owned the IP addresses who hacked the email account. In other words, although Thundervision didn't know that Felton had hacked the email account, as it only had generic IP addresses, the Court held that the knowledge that *someone* had hacked the account started the clock, even though Thundervision didn't know who that someone was until October 2, 2007 when Smith met with the investigator.
>
> The problem with that reasoning is that it begins the running of prescription before [Plaintiffs] even [knew] who the perpetrator [was]. Smith had generic IP addresses, without names, which was the whole reason for the Citizen's Complaint. Smith did not actually discover that DROR and Felton had committed the illegal acts until October 2, 2007, when a Department of Justice Agent met with Smith to discuss the investigatory findings. Thus, under the CFAA, Smith had until October 2, 2009 to file an action. As Smith's action was filed within two years on September 29, 2009, his 18 U.S.C. 1030 claim was filed within the two year prescriptive period.[52]

Plaintiffs additionally contend that this Court's reasoning was "inconsistent" with *Quantlabb Technologies Ltd. (BVI) v. Godlesvsky*,[53] which this Court cited in its order granting Felton's prior motion to dismiss, because *Quantlabb* stated that the limitations period would begin to run when the facts that would support a cause of action are or should be apparent, and "[o]bviously, one of those facts certainly must be who the actual perpetrator is."[54]

---

[51] *Id.* at 8 (citing 18 U.S.C. § 1030(g)).

[52] *Id.* at pp. 8-9 (emphasis in original).

[53] 719 F.Supp. 2d 766 (S.D. Tex. 2010).

[54] Rec. Doc. 111 at p. 9.

10

Further, Plaintiffs claim that acting on their suspicions of Felton would have "resulted in a premature lawsuit," and as a result "could have been seen as frivolous and therefore sanctionable" under Federal Rule of Civil Procedure 11(b).[55] Therefore, Plaintiffs contend that:

> [T]he above rationale places Smith in the position of either choosing to perform [a] legitimate investigation in order to determine the proper perpetrator, or simply guess at who the perpetrator is, without evidentiary support, and risk filing a frivolous suit and subject himself to possible sanctions. Furthermore, yet again one must start the inquiry with the fact that the action is brought by these individual petitioners, and not Thundervision. The actual loss to *these petitioners,* in the form of loss of income, did not take place until Thundervision became defunct in 2011.[56]

Finally, with regard to the CFAA claim, Plaintiffs assert that this argument is even more "tenuous" when applied to Higgins, Wallace, or Wright Avenue.[57] Plaintiffs argue that the date Smith filed the Citizen's Complaint could only apply to him, because there is no evidence that Higgins, Wallace, or Wright Avenue had any knowledge of the assertions made by Smith in the Citizen's Complaint.[58] Therefore, Plaintiffs argue that "there is clearly a genuine issue of material fact as to Higgins, Wallace, or Wright's knowledge base."[59]

With regard to their Wiretap Act claims, Plaintiffs acknowledge that this claim also imposes a two-year statute of limitations from when they first had a reasonable opportunity to discover the violation.[60] Without citing any authority, Plaintiffs argue:

---

[55] *Id.* at pp. 9-10.

[56] *Id.* at p. 10 (emphasis in original).

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.* at p. 11 (citing 18 U.S.C. § 2520(e)).

> [Plaintiffs] had to file their Complaint within two years of the date upon which they first had a reasonable opportunity to discover the violation. The violations at issue are complex and are not ascertainable without special skill. Smith initially had generic IP addresses without names. Though he had suspicion, nothing could be confirmed until an investigation took place by someone who was skilled and trained enough to retrieve the information. The results of that investigation were told to Smith on October 2, 2007, when a Department of Justice Agent met with Smith to discuss the investigatory findings. Before then, Smith had no reasonable opportunity to discover the violation because he did not have the skill or training to properly navigate the computer system, etc.. Smith's action was filed within two years on September 29, 2009. As the statute establishes the prescriptive period as two years from the date upon which the claimant first has a reasonable opportunity to discover the violation, Smith's action was filed within the prescriptive period.[61]

Again, Plaintiffs ague that at best the date of the Citizen's Complaint could only apply to Smith and that there is a genuine issue of material fact as to Higgins, Wallace, and Wright Avenue's knowledge base and reasonable opportunity to discover the violation.[62]

### B. Felton's Memorandum

In response, Felton argues that Thundervision's only members were Smith and Higgins, and that a "review of the company's operating procedures reveals that the business entity and its members have acted as one in the same on many occasions," and therefore "it can easily be concluded that the individuals and the company are one in the same."[63] Felton also stresses that on October 2, 2007, Smith informed an agent of the Louisiana Department of Justice that "'Thundervision had switched their data to a new server, thus removing access to their information,'" and that "'[s]ince the switch there ha[d] been no new unauthorized access to the new server.'"[64]

---

[61] *Id.* at pp. 11-12.

[62] *Id.* at p. 12.

[63] Rec. Doc. 112 at p. 2.

[64] *Id.* at p. 3 (quoting Rec. Doc. 104-1 at p. 1).

Therefore "Felton contends that it stands to reason that the injury or damage which led to Thundervision having to file Bankruptcy and eventually become defunct was sustained when the unauthorized access occurred," and therefore Plaintiffs' article 2315 claims had prescribed at the time of filing.[65]

Likewise, Felton contends that Plaintiffs CFAA claims were untimely filed. Felton argues that while Plaintiffs argue that the purpose of the Citizen's Complaint was to obtain the identification of who owned the IP address of who hacked the email account, Smith already "specifically and singularly named Laurie Felton as the individual responsible for accessing his business computer account without authorization, leaking sensitive business information and stalking him."[66] However, Felton notes that Smith also initiated an internal investigation about the hacking in 2007, which revealed that Felton was the person who accessed the accounts. To support this claim, Felton provides the sworn affidavits of Anthony Becnel and Charles Jagneuax, members of Thundervision's technical support staff.[67] Felton maintains that these affidavits make clear that Smith was aware of Felton's identity in March of 2007, and specifically named her in the Citizen's Complaint.[68]

Additionally, Felton refutes Plaintiffs' claims that filing early would have resulted in a premature or frivolous lawsuit that would have violated Rule 11(b). Felton avers that "the internal investigation performed on the server by Thundervision's technology staff would more than

---

[65] *Id.*

[66] *Id.* at pp. 3-4 (citing Rec. Doc. 104-1 at p. 3).

[67] *Id.* at 4-5 (citing Affidavit of Becnel, Rec. Doc. 104-1 at pp. 4-5; Affidavit of Jagneaux, Rec. Doc. 104-1 at pp. 6-7).

[68] *Id.* at p. 5.

constitute 'reasonable inquiry under the circumstances.'"[69] "Former employee Laurie Felton was successfully identified by Thundervision's tech team. As such, it is frivolous for [Plaintiffs] to suggest that any suspicions Smith may have had regarding Felton's identity as the perpetrator were 'speculative at best and actually irrelevant.'"[70] Further, Felton "takes issue" with Plaintiffs' assertion that their damage, in the form of lost income, did not take place until Thundervision went defunct in 2011 due to its bankruptcy.[71] "The reality of this situation is that Thundervision did not become bankrupt overnight. The actual loss or damage occurred the instant their server was accessed without authorization."[72]

Lastly on this cause of action, Felton disputes Plaintiffs' claim that any knowledge of wrongdoing evidenced by the Citizen's Complaint can only be imputed to Smith, the party who submitted the complaint:

> [Plaintiffs] put forth the argument that because Roger Smith filed the Citizen's Complaint, the prescriptive period should only apply to Smith. However, Roger Smith both contacted the Department of Justice and filed the Citizen's Complaint in his capacity as the managing editor of Thundervision, thus acting as a representative for Dale Higgins, Melanie Wallace and Wright Avenue, LLC.; but, in following suit with [Plaintiffs'] reasoning, because Thundervision is not a party to these proceedings, Roger Smith would be the only individual [plaintiff] with a legitimate cause of action against Felton, which has prescribed.[73]

With regard to the Wire Tap Act claim, Felton rejects Plaintiffs' argument that it could not have discovered the violation sooner because the violations were complex and not ascertainable

---

[69] *Id.* at p. 6.

[70] *Id.* (quoting Plaintiffs' Memorandum, Rec. Doc. 111 at p. 9).

[71] *Id.* at pp. 6-7.

[72] *Id.* at p. 7.

[73] *Id.* (internal footnote omitted).

without special skill.[74] Felton again notes that in March of 2007, Smith initiated an internal investigation with his technical support staff, who discovered Felton was the unauthorized person who accessed the server.[75] Felton also cites the Fifth Circuit's decision in *Pringle v. Schleuter*,[76] which this Court relied upon previously, to state that "'[t]he statute of limitations does not require the claimant to have actual knowledge of the violation; it only demands that the claimant have had a reasonable opportunity to discover it.'"[77]

Finally, Felton argues that because she was not served within 120 days after the complaint was filed, the claims against her must be dismissed without prejudice or the Court must order that service be made within a specific time, noting that she was first served on January 17, 2012.[78] Felton previously raised this issue, and the Court rejected it in its prior Order and Reasons, finding that Plaintiffs had established "good cause" to warrant an extension of the time to effect service.[79] As Felton provides no new arguments on this issue, the Court will decline to revisit it again here.

### III. Standard on a Motion for Summary Judgment

A district court may grant summary judgment on its own, independent of a motion, after giving notice and a reasonable time to respond, if the court "on its own identif[ies] for the parties material facts that may not be genuinely in dispute."[80] Summary judgment is appropriate when the

---

[74]  *Id.* at pp. 6-7.

[75]  *Id.* at p. 8.

[76]  388 F. App'x 449 (5th Cir. 2010) (per curiam).

[77]  Rec. Doc. 112 at p. 8 (citing *Pringle*, 388 F. App'x at 450).

[78]  *Id.* at p. 9.

[79]  *See* Rec. Doc. 86 at pp. 12-14.

[80]  Fed. R. Civ. P. 56(f)(3).

pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant [or the Court acting on its own pursuant to Rule 56(f)(3)finds that a party] is entitled to judgment as a matter of law."[81] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[82] All reasonable inferences are drawn in favor of the nonmoving party, but "'conclusory allegations []will not suffice to require a trial.'"[83] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[84]

Because factual disputes may not be resolved on summary judgment, a nonmovant need not offer all of its evidence, but rather only enough so that a jury *might* return a verdict in its favor.[85] If the nonmovant would bear the burden of proof at trial on a claim, the movant may simply point to the absence of evidence, which then returns the burden on the motion for summary judgment to the nonmovant.[86] Then, the nonmovant must point to competent evidence that there is an issue of material fact so as to warrant trial.[87] To defeat summary judgment, the nonmovant must direct the

---

[81] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[82] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[83] *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (quoting *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).

[84] *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[85] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

[86] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam).

[87] *Id.*

16

court's attention to specific evidence in the record to establish an issue of material fact as to each claim upon which it will bear the burden of proof at trial.[88] "The opponent must meet the movant's affidavits with opposing affidavits that set out specific facts showing an issue for trial."[89]

## IV. Law and Analysis

### A. Claims under Louisiana Civil Code Article 2315

#### 1. Law

A delictual obligation arises from the "intentional or negligent causing of damages" to another in the absence of a contract.[90] The parties do not dispute that the allegations relevant to Article 2315 in this action are appropriately considered delictual. Louisiana Code of Civil Procedure article 3492 governs delictual actions and states: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."[91]

#### 2. Analysis

Plaintiffs did not raise a claim under Article 2315 in the original complaint, but rather only brought federal causes of action under the CFAA and the Wire Tap Act.[92] It is only in the amended complaint that Plaintiffs raised this cause of action. Specifically, with regard to this cause of action, Plaintiffs allege:

---

[88]  *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996).

[89]  *Travelers*, 7 F.3d at 1206-07.

[90]  *Hostetler v. Gary & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 2 Cir. 1988).

[91]  *See also Wimberly v. Gatch*, 93-2361 (La. 4/11/94); 635 So. 2d 206, 211.

[92]  *See* Rec. Doc. 1.

> The plaintiffs have suffered damages as a direct result of all defendants' ***invasion of the plaintiffs' privacy*** as the result of the defendants' unauthorized access of their computer system, records and emails, including private business matters and strategies and privileged communications between plaintiffs and their attorneys. ***Pursuant to La. C.C. art. 2315***, the defendants are liable unto the plaintiffs for any and all damages that are just under the premises [sic].[93]

Throughout this proceeding, Plaintiffs persisted in the theory that their Article 2315 cause of action was premised on an alleged invasion of privacy caused by the alleged unauthorized access of Thundervision's server by Felton in 2007. In opposition to Felton's original motion to dismiss, Plaintiffs argued that despite the Citizen's Complaint evidencing that the alleged wrongdoing occurred in March of 2007, this cause of action should not be dismissed because "[i]n November of 2008, Nitzan Mendelbaum admitted in his deposition to having continued contact with Felton. It is therefore reasonable to believe that Felton and Mendelbaum were continuing to ***invade the privacy*** of Plaintiffs at least up to that point."[94] The Court rejected this argument because Plaintiffs did not actually allege any invasion of privacy or other tortious activity later than 2007, and could not avoid prescription based on "the mere possibility of later wrongdoing that Plaintiffs neither allege nor provide any evidence to substantiate."[95] In fact, Plaintiffs, in addressing their federal claims, argued that "***the damage and violation*** [allegedly caused by the defendants] were not actually discovered by Plaintiffs until October 2, 2007."[96] The Court previously noted that this assertion was pertinent, because, if accepted as true, Plaintiffs had conceded that by the time they

---

[93] Rec. Doc. 9 at ¶ 7 (emphasis added).

[94] Rec. Doc. 73 at pp. 16-17 (emphasis added).

[95] Rec. Doc. 86 at p. 17; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). While not raised by the parties, the Court also rejected the idea that this cause of action could constitute a "continuing tort." *See id.* & n. 80.

[96] Rec. Doc. 73 at p. 16.

18

filed this action on September 29, 2009, the one year prescriptive period had run on this claim.[97] Here, it clearly indicates that the "damage or violation" Plaintiffs intended to sue for with regard to this claim occurred before October 2, 2007, by their own admission.

It was only after the Court granted Felton's motion to dismiss and dismissed Plaintiffs' Article 2315 claims that Plaintiffs disregarded their invasion of privacy theory.[98] Now, Plaintiffs argue that the "damage" they suffered was a result of the income they lost as a result of Thundervision becoming defunct in 2011.[99]

Plaintiffs' arguments are problematic for several reasons. First, the amended complaint clearly states that the "damage" they allege under this cause of action is for "invasion of privacy," and Plaintiffs argued this throughout, until this Court dismissed those claims. Plaintiffs even admitted that they discovered their damage by at least October 2, 2007.[100] Now, Plaintiffs attempt to recast this cause of action as lost income, because Thundervision, their employer, went defunct in 2011. In making this argument, Plaintiffs even acknowledge that "perhaps their 2315 claims were premature when they were initially filed" in 2010[101] because they only lost income when Thundervision went defunct in 2011.[102]

---

[97] *See* Rec. Doc. 86 at p. 18 (Court's prior order referencing this language).

[98] *See* Rec. Doc. 100-1 at pp. 4-5 (Plaintiffs' memorandum in support of reconsideration of order dismissing claims against Felton).

[99] *Id.* at p. 5; *see also* Rec. Doc. 111 at p. 7.

[100] Rec. Doc. 73 at p. 16.

[101] Plaintiffs state that their Article 2315 claims were filed in 2009. *See* Rec. Doc. 111 at p. 7. However, as previously noted, Plaintiffs' Article 2315 claims were first raised in their amended complaint filed on December 15, 2010. Rec. Doc. 9. Either date would compel the same result, however.

[102] *See* Rec. Doc. 111 at p. 7.

Plaintiffs' assertions are contradictory and implausible. How could Plaintiffs file suit in 2009 and raise claims for lost wages in 2010 via the amended complaint, before they lost any wages or where the event that allegedly caused their lost wages, the bankruptcy of Thundervision, would not occur until 2011? The faulty logic in this argument is undeniable, and Plaintiffs' implausible claims could not even survive the more deferential standard their claims would be entitled to upon a motion to dismiss.[103] Moreover, in arguing that their CFAA claims have not expired, Plaintiffs claim they could not have filed that claim earlier because it would amount to a "premature lawsuit" that could be sanctionable under Rule 11(b).[104] Plaintiffs want it both ways. On the one hand, for Plaintiffs' Article 2315 claims to survive, Plaintiffs ask this Court to accept that they filed a "premature lawsuit" almost two years before they sustained the alleged damage; however, with regard to their CFAA claims, Plaintiffs argue that they could not possibly have filed earlier, because filing such a "premature lawsuit" would be sanctionable.  As the amended complaint and Plaintiffs' previous arguments make clear, the Article 2315 claims were for an alleged "invasion of privacy" that occurred from Felton's alleged unauthorized access into Thundervision's server in or before 2007. As such, when this action was filed on September 29, 2009, the prescriptive period on the Article 2315 claims had expired. Therefore, the Court will dismiss this claim as to all defendants.

---

[103] *See Twombly*, 550 U.S. at 570 (stating that to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").

[104] Rec. Doc. 111 at pp. 9-10.

***B. Claims under the CFAA***

### 1. Law

The Computer Fraud and Abuse Act imposes a two year statute of limitations period that runs from "the date of the act complained of or the date of the discovery of the damage."[105] "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."[106] There is no argument that the act complained of, Felton's alleged hacking of Thundervision's server, occurred more than two years before the filing of this action. However, despite this fact, and without citing authority, Plaintiffs take the position that a later alleged date of "the discovery of the damage" should control the statute of limitations period with regard to this claim.

### 2. Analysis

This Court previously analogized this case to the Eastern District of Texas's decision in *Quantlabb*. In the court's analysis of this specific statute, it relied on the Fifth Circuit's decision in *Jones v. Alcoa, Inc*,[107] which states that, in general, the statute of limitations "begins when facts that would support a cause of action are or should be apparent."[108]  In *Quantlabb*, the court declined to charge the plaintiffs with knowledge of the violation or damages at the time when they filed another complaint against the same defendant. The court reasoned that the first complaint:

> allege[d] only that [the plaintiff] was aware of threats by [the defendant] to reveal proprietary information. ***Because that complaint d[id] not state the source or nature***

---

[105]  18 U.S.C. § 1030(g).

[106]  18 U.S.C. § 1030(e)(8)

[107]  339 F.3d 359 (5th Cir. 2003).

[108]  *Id.* at 366 (internal quotations omitted).

*of the proprietary information at issue in that case, and because the alleged*
*conduct was different from that alleged in this case, the Court concludes that that*
*complaint does not establish [plaintiff]'s awareness of an unauthorized access into*
*its computer system at any particular time*.[109]

As a result, the Court "f[ound] no basis in the pleadings to conclude that the statute of limitations

had run before suit was filed."[110] Plaintiffs here claim that because they did not know for certain

that it was Felton who improperly accessed Thundervision's server, this Court was incorrect in

using the date of the Citizen's Complaint to begin the statute of limitations. However, the flaw in

this argument is revealed by language from *Quantlabb* emphasized above.

The emphasized language highlights that under this statute, knowledge of unauthorized

access is the information critical to begin the statute of limitation. There is no mention that a

plaintiff must know the alleged perpetrator for the statute of limitations to begin. Unlike the

plaintiffs in *Quantlabb*, here, Smith knew of the unauthorized access, even if he only suspected

the identity of the perpetrator. Plaintiffs argue that it is nonsensical for the statute of limitations

to begin to run at a time before they knew for certain the identity of the proper defendant.

However, Smith has admitted that he already did in fact know of Felton's alleged activities.

Moreover, in addition to the Citizen's Complaint, Felton has provided the affidavits of Becnel and

Jagneaux, members of Thundervision's technical support team, who Smith tasked with carrying

out an investigation into the alleged hacking. Becnel stated in his sworn affidavit:

> In March 2007, Roger Smith told us (Sean Anthony Becnel and Charles Jagneaux)
> that [an individual] was receiving email that was sent from his email account without
> his knowledge or permission and asked us to find out how this was happening. We
> examined the delivery information inside the email messages...and determined that
> the email messages had been sent through a Cox Communications internet account

---

[109]  719 F.Supp 2d at 775 (emphasis added).

[110]  *Id.*

located in New Orleans, Louisiana. We then searched through the email access records on our email server for all access to the email server from that specific Cox Communications account. ... ***We were able to find multiple instances of access from the Cox Communications [account] to Laurie Felton's email account dating from when she was an employee of Thundervision (prior to October 2006). We also found multiple instances of access and attempted access from the Cox Communications to Laurie Felton's email account after she was no longer employed by Thundervision and to Roger Smith's email account between December 2006 and March 2007. ... We checked the dates and times and the location of the accesses with Roger Smith and he confirmed that he was neither in New Orleans nor did he access or have other people access his email account when these accesses took place. We then isolated the time and location records and provided them to law enforcement personnel.***[111]

Similarly, Jagneaux stated:

Roger Smith informed me that an unknown person had accessed his email account...without permission and forwarded messages from his account to the inbox of [an individual]. I examined copies of the forwarded emails and determined that the unauthorized access had originated from an IP address belonging to a COX Communications customer in New Orleans, Louisiana. ... ***One IP address, belonging to COX Communications in New Orleans, logged into our webmail using the username rwsmith on December 27, 2006. This same IP address had logged into our webmail using the username laurie on Oct 01, 2006.***[112]

This evidence, which Plaintiffs have neither addressed nor refuted, further demonstrates Smith's knowledge that Felton was the alleged perpetrator well before two years prior to filing this action.

Here, Smith knew of unauthorized access to the computer system, which prompted Smith to initiate an internal investigation and submit his Citizen's Complaint on March 21, 2007. Thus, it is clear that Smith had an "awareness of an unauthorized access into [Thundervision's] computer system," which began the statute of limitations period more than two years before this action was filed.

---

[111]  Affidavit of Becnel, Rec. Doc. 104-1 at p. 3 (emphasis added).

[112]  Affidavit of Jagneaux, Rec. Doc. 104-1 at pp. 6-7 (emphasis added).

23

However, while Plaintiffs did not raise this argument when this issue was initially briefed, Plaintiffs now claim for the first time that even if Felton can establish that Smith had knowledge of facts giving rise to his federal claims as evidenced by the filing of his Citizen's Complaint, such knowledge cannot be imputed to the other plaintiffs.  In response, Felton claims:

> Roger Smith both contacted the Department of Justice and filed the Citizen's Complaint in his capacity as the managing editor of Thundervision, thus acting as a representative for Dale Higgins, Melanie Wallace and Wright Avenue, LLC.; but, in following suit with [Plaintiffs'] reasoning, because Thundervision is not a party to these proceedings, Roger Smith would be the only individual [plaintiff] with a legitimate cause of action against Felton, which has prescribed.[113]

The Court is not sure it follows Felton's argument, but the Court believes she is arguing that only a representative of Thundervision, or Thundervision itself, could recover from unauthorized access to Thundervision's servers. Felton cites no authority for this position. Moreover, the clear language of the act would undercut such a position: "***Any person who suffers damage or loss by reason of a violation of this section*** may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."[114] As Felton has not submitted evidence on this issue, the Court finds that there is a disputed issue of material fact as to when Plaintiffs Higgins, Wallace, and Wright Avenue had knowledge of the alleged unauthorized access, and will therefore not grant summary judgment dismissing these plaintiffs claims under the CFAA on these grounds. However, the Court notes that it has already dismissed all claims against Defendants Mendelbaum and DROR brought by Plaintiffs Smith, Higgins, and Wright Avenue on the basis

---

[113]  Rec. Doc. 112 at p. 7 (internal footnote omitted).

[114]  18 U.S.C. § 1030(g) (emphasis added).

of *res judicata*, and has dismissed all of Wallace's claims against all defendants for failure to state a claim.[115]

## C. Claims under the Wire Tap Act

### 1. Law

Under the Wire Tap Act, a plaintiff may commence an action "no later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[116] In *Pringle*, the Fifth Circuit stated that, "[t]he limitation period begins to run once the plaintiff has enough notice as would lead a reasonable person to either sue or launch an investigation."[117] There, the Fifth Circuit affirmed a district court after it granted a defendant's motion for summary judgment on the basis that the statute of limitations had run. The plaintiffs had received notice of recording devices in their office over two years prior to filing their action. On appeal, the plaintiffs argued that when they knew or should have known of the intercepted communications was a material issue of fact.[118] The Fifth Circuit rejected this argument: "The statute of limitations does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it."[119] The Fifth Circuit held that the statute of limitations began to run when the recording devices were discovered.[120]

---

[115] *See* Rec. Doc. 80.

[116] 28 U.S.C. § 2520(e).

[117] 388 Fed. App'x. at 450 (citing *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2003)).

[118] *Id.*

[119] *Id.*

[120] *Id.*

### 2. Analysis

Plaintiffs argue that they filed their action within two years of the date upon which they first had a reasonable opportunity to discover the violation, because the violations at issue "are complex and are not ascertainable without special skill."[121] However, it is undisputed that Smith (1) initiated an internal investigation because he suspected unauthorized access to Thundervision's server in March 2007 and (2) filed a Citizen's Complaint on March 21, 2007, specifically complaining of such unauthorized access and stating his suspicion that Felton was the perpetrator. Despite the fact that this Court cited *Pringle* in its original order dismissing this claim,[122] Plaintiffs have declined to address *Pringle* at all, or cite any other case law on this issue, either here or in their original memorandum in support of reconsidering this issue.[123]

The Court finds that the undisputed fact that Smith initiated an internal investigation (which implicated Felton) and filed a Citizen's Complaint wherein he alleged Felton hacked Thundervision's server, evidences at a minimum that Smith had a reasonable opportunity to discover, and in fact did discover, the violation more than two years before he filed this suit. Smith's internal investigation and Citizen's Complaint are even more compelling evidence of his "reasonable opportunity" to discover the violation than that in *Pringle*, because Smith stated that he believed there was a violation and even identified a suspect, Felton. Therefore, the Court finds that Smith's cause of action under the Wire Tap Act was untimely filed on September 29, 2009. However the same factual issue regarding imputing Smith's knowledge under the CFAA to the

---

[121] Rec. Doc. 111 at p. 11.

[122] *See* Rec. Doc. 86 at p. 21.

[123] *See* Rec. Doc. 100-1.

other plaintiffs applies to this cause of action as well. Therefore, the Court will likewise not dismiss Plaintiffs Higgins, Wright Avenue, and Wallace's Wire Tap Act claims as expired either.

### V. Conclusion

For the reasons stated above, all of Plaintiffs' claims under Louisiana Civil Code article 2315 have prescribed, and therefore the Court will grant summary judgment in favor of all defendants dismissing these causes of action with prejudice. Further, as the undisputed facts demonstrate that Smith had knowledge adequate to trigger the statute of limitations under the CFAA and Wire Tap Act more than two years before this action was filed, the Court will further grant summary judgment dismissing with prejudice Smith's claims under these acts as to all defendants. In contrast, as there remain disputed issues of material fact as to when Plaintiffs Higgins, Wright Avenue, and Wallace had knowledge sufficient to trigger these time limitations, the Court will not grant summary judgment dismissing their claims under these acts. However, the Court again notes that all claims against Defendants Mendelbaum and DROR have been dismissed on the grounds of *res judicata* with regard to Plaintiffs Higgins, Smith, and Wright Avenue, and all of Wallace's claims against all defendants have been dismissed for failure to state a claim.[124] Accordingly,

**IT IS HEREBY ORDERED** that summary judgment is **GRANTED** in favor of all defendants dismissing with prejudice all Plaintiffs' claims under Louisiana Civil Code article 2315;

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of all defendants dismissing with prejudice Plaintiff Smith's claims under the CFAA and Wire Tap Act;

---

[124] *See* Rec. Doc. 80.

**IT IS FURTHER ORDERED** that the parties may reurge all motions that were previously denied without prejudice pending resolution of this issue;

**IT IS FURTHER ORDERED** that this case be reopened and that the Court will issue a new scheduling order and trial date.

**NEW ORLEANS, LOUISIANA**, this 26th day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**