# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DALE HIGGINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  09-6594** |
| **NMI ENTERPRISES, INC., et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

This litigation concerns Plaintiffs' claims for damages stemming from Defendants' alleged unauthorized access of certain email accounts. Before the Court is Plaintiffs' Reurged Motion for a New Trial, wherein Plaintiffs "seek a new trial on all issues addressed in this Court's Order granting DROR and Mendelbaum's Motion to Dismiss on the basis of *res judicata* and collateral estoppel as to Smith, Higgins, and Wright Avenue, and granting the dismissal of Wallace's claims for failure to state a claim upon which relief can be granted."[1] Upon considering the pending motion, the memoranda in support, the memoranda in opposition, and the applicable law, the Court will grant the motion in part and deny it in part.

## I. Background

### A. Parties and Their Relationship

Defendant DROR is a limited partnership in the business of magazine publishing;[2] it was formerly known as NMI Enterprises, Inc. ("NMI").[3] Defendant Nitzan Mendelbaum ("Mendelbaum")

---

[1]  Rec. Doc. 125 at p. 1.

[2]  Rec. Doc. 33 at ¶ 3.

[3]  *Id.* The record reflects that NMI Enterprises, Inc. has been terminated as a party.

is a limited partner of DROR, and was formerly the president of NMI.[4] Defendant Laurie Felton ("Felton") was previously an employee of *Louisiana Homes & Garden Magazine,* a magazine published by the plaintiffs.[5]

Defendant Today's House & Home, Inc. is a Texas corporation.[6] Defendants Robert D. Reuthlinger ("Reuthlinger"), Timothy A. Beeson ("Beeson"), and Michael D. Harrison ("Harrison") were shareholders, officers, or employees of Today's House and Home, Inc.[7] Defendant Tracie W. Begnaud ("Begnaud") is a resident of Lousiana.[8]

Plaintiffs Dale Higgins ("Higgins") and Roger Smith ("Smith") are the sole members of Thundervision, LLC ("Thundervision"), which is involved in the publication of magazines, namely *Louisiana Homes & Garden Magazine*.[9] Plaintiff Wright Avenue Associates, LLC ("Wright Avenue"), was an original owner of Thundervision.[10]  Higgins was an owner and the managing member Wright Avenue.[11] Plaintiff Melanie Wallace ("Wallace") was an employee of *Louisiana Homes & Garden Magazine*.[12] Hereinafter, all plaintiffs will be referred to collectively as "Plaintiffs."

---

[4] *Id.* In addition, Mendelbaum is later referred to as the "sole member and president" of DROR. *See* Rec. Doc. 50 at p. 2 (describing Mr. Mendelnaum as "the president and sole member of DROR").

[5] Rec. Doc. 58 at ¶ 3.

[6] Rec. Doc. 9 at ¶ 2.

[7] *Id.*

[8] *Id.*

[9] Rec. Doc. 1. at ¶ 4.

[10] *Id.* at ¶ 2.

[11] *Id.*

[12] *Id.* at ¶ 4.

### B. Prior Legal Actions

The above-captioned matter is not the first round of litigation many of these parties and entities have pursued against one another. On July 6, 2007, DROR brought suit against Thundervision, Smith, Higgins, and Wright Avenue for the alleged non-payment of overdue invoices in the Twenty Fourth Judicial District Court, State of Louisiana.[13] In response, Plaintiffs filed a counterclaim, alleging that two issues of *Louisiana Home & Gardens* printed by DROR were defective.[14] However, on April 21, 2009, before trial had occurred, Thundervision filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana.[15]

In bankruptcy court, DROR filed a proof of claim, in the amount of $181,411.40, on the basis of the overdue invoices.[16] Thundervision objected to the claim and filed a complaint for damages to offset of any amount owed to DROR. In this complaint, Thundervision asserted that Felton had provided Mendelbaum, in his capacity as a member of DROR, with access to Thundervision's business email accounts,[17] and prayed for relief pursuant to the Computer Fraud and Abuse Act,[18] the

---

[13] Rec. Doc. 43-1 at p. 3; *see also* Rec. Doc. 43-10, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Adversary No. 09-1063A, Memorandum Opinion, entered June 1, 2010 (Magner, B.J.), at p. 3.

[14] Rec. Doc. 43-1 at p. 3.

[15] Rec. Doc. 43-10, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Adversary No. 09-1063A, Memorandum Opinion, entered June 1, 2010 (Magner, B.J.), at p. 2.

[16] *Id.*; *see also DROR Int'l, L.P. v. Thundervision, LLC*, No. 09-3702, Order and Reasons, entered July 15, 2009 (Lemmon, J.), at Rec. Doc. 5, p. 2–3.

[17] Rec. Doc. 43-7, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Objection to Claim No. 4, entered June 1, 2009, at p. 2.

[18] 18 U.S.C. § 1030.

Wire Tap Act,[19] and Louisiana Civil Code Article 2315. Thundervision's complaint alleged that the bankruptcy court had jurisdiction over its claims against DROR as a "core proceeding."[20]

After filing for bankruptcy, Thundervision removed the state court breach-of-contract proceedings to the United States District Court for the Eastern District of Louisiana.[21] Following removal, DROR's claims against Thundervision were referred to the bankruptcy court as a core proceeding.[22] However, DROR's claims against Higgins, Smith, and Wright Avenue were remanded to the state court because they "did not arise under title 11."[23]

DROR's breach-of-contract case against Thundervision and Thundervision's unauthorized computer access case against DROR went forward as adversary proceedings before Judge Elizabeth Magner in the United States Bankruptcy Court for the Eastern District of Louisiana.[24] On a motion for partial summary judgment, the bankruptcy court found Thundervision liable on five invoices to DROR totaling $143,728.05.[25] At trial, the parties contested one additional invoice and whether Thundervision was entitled to an offset based upon its multiple claims arising from the alleged unauthorized access of its email accounts and computers.[26] At the conclusion of trial, judgment was

---

[19] 18 U.S.C. § 2510.

[20] Rec. Doc. 43, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Objection to Claim No. 4, entered June 1, 2009, at p. 1.

[21] *DROR Int'l, L.P. v. Thundervision, LLC*, No. 09-3702, Notice of Removal, entered June 1, 2009, at Rec. Doc. 1.

[22] *DROR Int'l, L.P. v. Thundervision, LLC*, No. 09-3702, Order and Reasons, entered July 15, 2009 (Lemmon, J.), at Rec. Doc. 5, p. 3.

[23] *Id.* at p. 4.

[24] Rec. Doc. 43-10, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Adversary No. 09-1063A, Memorandum Opinion, entered June 1, 2010 (Magner, B.J.), at p. 1–3.

[25] *Id.* at p. 3.

[26] *Id.* at p. 2–4.

entered in favor of DROR concerning the remaining disputed invoice, but that award was offset by judgments in favor of Thundervision for DROR's violations of the Computer Fraud and Abuse Act and Louisiana Civil Code Article 2315.[27] The bankruptcy court specifically rejected Thundevision's claims under the Wiretap Act, finding that the statute "does not apply to the facts of this case and cannot be used to award Debtor monetary awards, attorneys fees, or punitive damages."[28]

After the bankruptcy proceedings, the state court suit resumed to address, as Defendants explain in their original motion to dismiss, "claims asserted against Mr. Smith, Mr. Higgins, and Wright Avenue by DROR . . . based on guarantees issued by said parties on the accounts of Thundervision as claimed in the Bankruptcy proceeding."[29] In the state court suit, DROR filed a motion to dismiss on the basis of *res judicata* pursuant to the bankruptcy court judgment as well as a motion for summary judgment.[30] The motion for summary judgment was granted, and Smith, Higgins, and Wright Avenue appealed this ruling to the Louisiana Fifth Circuit Court of Appeal.[31] DROR's motion to dismiss on the basis of *res judicata* was denied.[32]

---

[27]  *Id.* at p. 1.

[28]  Rec. Doc. 43-11, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Adversary No. 09-1063A, Memorandum Opinion, entered June 1, 2010 (Magner, B.J.), at p. 13.

[29]  Rec. Doc. 50, at p. 4; *see also*  Rec. Doc 43-1, at p. 6.

[30]  *See* Rec. Doc. 43-1, at p. 6; Rec. Doc. 46 at p 5; Rec. Doc. 50, at p. 4.

[31]   *See* Rec. Doc. 43-1, at p. 6; Rec. Doc. 46 at p. 5.

[32]  *See* Rec. Doc. 46, at p. 5; Rec. Doc. 50, at p. 4.

*C. Instant Lawsuit*

**1. Factual Allegations**

The complaint in the action pending before this Court was filed on September 29, 2009, and initially named Mendelbaum, DROR, NMI, and Felton as defendants.[33] This action was originally allotted to Judge Jay C. Zainey, Section "A."

Plaintiffs allege that "Felton gave Mendelbaum, acting as partner of DROR and president of its general partner, NMI, Smith's e-mail password and thereafter all Defendants used that password to read Smith's e-mails to and from the other Plaintiffs about their business and legal matters as well as those to and from his (Smith's) attorneys [regarding the suit against Thundervision] for alleged breach of contract by DROR and NMI."[34] Plaintiffs assert that the Defendants stole Smith's password "to facilitate a takeover of 'Louisiana Home & Garden Magazine.'"[35] In their initial complaint filed before this Court, Plaintiffs sought damages pursuant to the Computer Fraud and Abuse Act and the Wire Tap Act.[36]

On December 15, 2010, Plaintiffs filed an amended complaint, wherein they added several more defendants and incorporated by reference against the new defendants all allegations made in the first complaint.[37] Specifically, Plaintiffs added Reuthlinger, Beeson, and Harris, all alleged to be "shareholder[s] and/or officer[s] and/or employee[s] of Today's House & Garden, Inc.," a Texas

---

[33]   Rec. Doc. 1. NMI has subsequently been terminated as a party.

[34]   *Id.* at ¶ 5.

[35]   *Id.* at ¶ 6.

[36]   Rec. Doc. 1 at ¶¶ 9–12.

[37]   Rec. Doc. 9.

Corporation that was also added as a defendant.[38] Additionally, Begnaud was added as a defendant.[39] Plaintiffs also added a third cause of action under Louisiana Civil Code Article 2315 for "invasion of privacy," on the basis of the allegations that the defendants misappropriated Smith's email password and read his emails.[40]

On October 7, 2011, this action was reassigned to Section "G" as part of a new docket.[41]

### 2. Procedural Background

On November 30, 2012, the Court granted Defendants Mendelbaum's and DROR's motion to dismiss them from this lawsuit. Specifically, the Court found that the claims of Smith, Higgins, and Wright Avenue were barred by *res judicata*, and Wallace's claims were subject to dismissal because she failed to meet her pleading requirements and to demonstrate her entitlement to relief.[42] Plaintiffs filed a motion for reconsideration and/or new trial regarding this issue.[43]

On January 2, 2013, the Court also granted Felton's motion to dismiss,[44] finding that based on a Citizen's Complaint filed by Smith, which demonstrated his knowledge of the alleged wrongdoing by Defendants, Plaintiffs were on notice of their causes of action at such a time that when they filed their initial complaint in this action, all relevant statutes of limitations and

---

[38] *Id.* at ¶ 2.

[39] *Id.* at pp. 1-2.

[40] *Id.* at ¶ 7.

[41] Rec. Doc. 45.

[42] Rec. Doc. 80.

[43] Rec. Doc. 85.

[44] Rec. Doc. 71.

prescriptive periods had expired.[45] While Begnaud had previously filed two separate motions for summary judgment to dismiss her from this action,[46] based on this order, Begnaud filed a third motion seeking her dismissal from this action on these grounds.[47] Plaintiffs also filed a motion asking for reconsideration of this Court's order dismissing the claims against Felton.[48]

On June 25, 2013, this Court entered an order granting reconsideration on its order granting Felton's motion to dismiss, because the order granting dismissal was based on the Citizen's Complaint, a matter outside the pleadings.[49] However, the Court noted that none of Felton's factual contentions regarding the contents of the Citizen's Complaint appeared to be in dispute. Therefore, pursuant to Rule 56(f)(3), the Court provided notice to the parties of its intention to consider summary judgment on its own, and set a schedule for the parties to file memoranda on the issue.[50] Moreover, the Court acknowledged that if Felton's claims regarding the statutes of limitations and prescriptive periods were correct, this would have implications on the claims against all defendants. As such, in the interest of judicial economy, the Court denied without prejudice all pending dispositive motions filed by the defendants and all motions for reconsideration filed by Plaintiffs, with leave to reurge these motions if the Court did not dismiss this case after addressing the issues raised by the Citizen's Complaint.[51]

---

[45] Rec. Doc. 86.

[46] Rec. Docs. 83, 84.

[47] Rec. Doc. 88.

[48] Rec. Doc. 100.

[49] Rec. Doc. 110 at p. 2 (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

[50] *Id.* at pp. 2-3.

[51] *Id.* at p. 4.

After receiving memoranda from Plaintiffs and from Felton,[52] on August 26, 2013, the Court entered an order that (1) granted summary judgment in favor of all defendants with respect to all plaintiffs' causes of action under Louisiana Civil Code Article 2315, (2) granted summary judgment in favor of all defendants with respect to Smith's claims under the Computer Fraud and Abuse Act and the Wire Tap Act, and (3) denied summary judgment as to the remaining plaintiffs' causes of action under the Computer Fraud and Abuse Act and the Wire Tap Act.[53] In that order, the Court also provided that the "the parties may reurge all motions that were previously denied without prejudice pending resolution of this issue."[54]

On October 15, 2013, Plaintiffs reurged the pending motion for new trial, wherein Plaintiffs "seek a new trial on all issues addressed in this Court's Order granting DROR and Mendelbaum's Motion to Dismiss on the basis of *res judicata* and collateral estoppel as to Smith, Higgins, and Wright Avenue, and granting the dismissal of Wallace's claims for failure to state a claim upon which relief can be granted."[55] On November 26, 2013, DROR and Mendelbaum filed a memorandum in opposition.[56] Following the Court's request for further briefing regading *res judicata* in the context

---

[52] Rec. Doc. 111 (Plaintiffs' Memorandum); Rec. Doc. 112 (Felton's Memorandum).

[53] Rec. Doc. 113.

[54] *Id.* at p. 28.

[55] Rec. Doc. 125 at p. 1.

[56] Rec. Doc. 134.

9

of bankruptcy proceedings,[57] Plaintiffs filed additional memoranda in support,[58] and Defendants submitted a further memorandum in opposition.[59]

Since the filing of the motion for a new trial, a number of the defendants have settled with Plaintiffs. Plaintiffs' claims against Begnaud were dismissed on November 15, 2013,[60] and those against Felton were dismissed on December 2, 2013.[61] Additionally, Plaintiffs' claims against Reuthlinger, Beeson, Harrison, and Today's House & Home, Inc. were dismissed on December 3, 2013.[62]

## II. Parties' Arguments

### A. Plaintiffs' Arguments in Support

Plaintiffs bring the pending motion pursuant to Federal Rule of Civil Procedure 59(a), which provides that "a new trial may be granted to all or any parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."[63] According to Plaintiffs, when considering a 59(a) motion, "the court may set aside the verdict even if there is substantial evidence to support it."[64] However, Plaintiffs acknowledge that "'[t]he district court abuses its

---

[57] Rec. Doc. 140.

[58] Rec. Doc. 141; Rec. Doc. 143.

[59] Rec. Doc. 142.

[60] Rec. Doc. 129.

[61] Rec. Doc. 136.

[62] Rec. Doc. 138.

[63] Rec. Doc. 125-1 at p. 4 (citing Fed. R. Civ. Pro. 59(a)).

[64] *Id.*

discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict.'"[65]

Plaintiffs argue that a new trial is appropriate here because Plaintiffs' claims against DROR and Mendelbaum should not be barred by the doctrine of *res judicata*.[66] Plaintiffs point out that "[t]he previous proceeding was the bankruptcy of Thundervision," and aver that "Smith, Higgins, and Wright Avenue *could not* have brought their *personal* claims against DROR and Mendelbaum *in that matter*."[67] Thus, according to Plaintiffs, "Smith, Higgins, and Wright Avenue, in fact, *have not ever* had an opportunity to be heard on their personal claims against DROR and Mendelbaum," and "*res judicata* should not apply to their *personal* claims here."[68]

In support of their position, Plaintiffs assert that the bankruptcy judge "made no judgments or determinations relative to Smith, Higgins, or Wright Avenue *personally* because: (1) those actions and those parties *were not* in front of Judge Magner; because (2) Smith, Higgins, and Wright Avenue *could not* bring their *personal* actions against DROR or Mendelbaum in *Thundervision's* bankruptcy."[69] Plaintiffs urge that "[d]ebtor relief under the Bankruptcy Code is *personal* to the debtor."[70]

---

[65] *Id.* (quoting *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)).

[66] *Id.*

[67] *Id.* at p. 5 (emphasis in original).

[68] *Id.* (emphasis in original).

[69] *Id.* at p. 6 (emphasis in original).

[70] *Id.* (emphasis in original).

Plaintiffs aver that the Court was incorrect in concluding that "privity of the parties subjected Smith, Higgins, & Wright Avenue's claims to *res judicata*."[71] According to Plaintiffs, in its order, the Court relied on *Drier v. Tarpon Oil Company*[72] for the proposition that "privity may be found if a non-party controlled the earlier lawsuit and its interests were represented by the party in the first lawsuit." Plaintiffs contend that the Court "reasoned that Smith, Higgins, and Wright Avenue controlled Thundervsion's bankruptcy, and thus concluded that they are precluded from proceeding with their *personal* claims in this suit."[73] However, Plaintiffs aver that this reasoning "ignores the second half of the [*Drier*] prerequisite" in that "Smith, Higgins, and Wright Avenue's interest were not represented by Thundervision in the bankruptcy, because their claims *could not* have been advanced in *Thundervision's* bankruptcy."[74]

In addition to objecting to the Court's rulings regarding *res judicata*, Plaintiffs also contend that the Court's order "is incorrect as to Melanie Wallace because as an employee of Thundervision she suffered damages in the form of loss [sic.] wages as a result of the acts by the defendants."[75] Plaintiffs aver that "employees of Thundervision were injured as a result of the defendants' illegal activity which resulted in the bankruptcy of Thundervision and ultimate defunct of Thundervision."[76]

---

[71] *Id.* at p. 7.

[72] 552 F.2d 199 (5th Cir. 1975).

[73] *Id.* at p. 8 (emphasis in original).

[74] *Id.* (emphasis in original).

[75] *Id.* (emphasis in original)

[76] *Id.* at p. 9.

**B. Defendants' Arguments in Opposition**

In opposition, Defendants contend that Plaintiffs "completely ignor[e] the fact that Smith, Higgin [sic] and Wright Avenue had full opportunity to assert any such alleged claims in the matter before the 24th Judicial District Court for the Parish of Jefferson," which named Smith, Higgins, and Wright Avenue as individual defendants.[77] According to Defendants, "the causes of action asserted in the instant suit existed at the time of final judgment in the bankruptcy proceeding, as well as, at the time of the final judgment in the state court proceeding."[78] Defendants therefore reason that because "the causes of action asserted by Plaintiffs for the second time in the instant suit existed at the time the final judgment in the bankruptcy proceeding was rendered in June 2010 . . . said causes of action are barred by the doctrine of *res judicata*."[79] Addressing Plaintiffs' argument that the causes of action in the pending suit are personal and thus could not have been asserted in the bankruptcy proceeding, Defendants aver that "no 'personal' damages are warranted here, as the 'unauthorized accesses' upon which Plaintiffs' claims are based have been established by the bankruptcy court as access to Mr. Smith's **business** e-mails only."[80]

With respect to the claims asserted by Wallace, Defendants contend that Plaintiffs' argument that Wallace suffered lost wages is "clearly overreaching and lacks merit."[81] Defendants assert that

---

[77] Rec. Doc. 134 at pp. 6–7.

[78] *Id.* at p. 7.

[79] *Id.* at p. 8.

[80] *Id.* (emphasis in original).

[81] *Id.* at p. 9.

"Thundervision was clearly in financial trouble and at risk of demise without any involvement or blame on the part of DROR/Mendelbaum."[82]

## C. Supplemental Briefing

In their supplemental briefs, the Plaintiffs and Defendants address two cases dealing specifically with *res judicata* issues in the context of bankruptcy proceedings—*Latham v. Wells Fargo Bank, N.A.*[83] and *Howell Hydrocarbons, Inc. v. Adams*.[84]  Plaintiffs maintain that this case law supports their position that the claims are not barred because "plaintiffs' personal claims are non-core claims of Thundervision's bankruptcy."[85] Plaintiffs further aver that their "personal claims have no affect on the distribution of Thundervision's assets."[86] Thus, according to Plaintiffs, "[t]he mere fact that Thundervision asserts a counter-claim against a creditor in its bankruptcy should not prevent Plaintiffs from pursuing their personal claims against that creditor in district court."[87]

Defendants argue under *Latham*, *res judicata* still applies "where injuries are suffered by a plaintiff in his capacity as a shareholder from wrongs allegedly inflicted on his corporation."[88] According to Defendants, "Smith and Higgins authorized and consented to the jurisdiction of the bankruptcy court by executing an Authorization and Consent stating, in pertinent part, that is [sic.] was desirable and in the best interest of the Company, **its creditors and other interested parties** that

---

[82] *Id.* at p. 10.

[83] 896 F.2d 979 (5th Cir. 1990).

[84] 897 F.2d 183 (5th Cir. 1990).

[85] Rec. Doc. 141 at p. 2.

[86] *Id.* at p. 4.

[87] *Id.* at p. 7.

[88] Rec. Doc. 142, at p. 3.

14

a petition be filed by the Company seeking relief under the provisions of Chapter 11, Title 11 of the United States Code."[89]

Furthermore, Defendants distinguish *Howell* on the grounds that *Howell* "is rooted in a confirmation of plan [of] reorganization with no opportunity whatsoever to litigate claims" while the pending matter involves adversary proceedings before the bankruptcy court.[90] Defendants additionally argue that "your plaintiffs, unlike those in *Howell*, maintained an interest in any monies received or benefit obtained by Thundervision in connection with its counterclaims against DROR, as they were either shareholders or creditors in the bankruptcy proceedings."

Citing *Stern v. Marshall*, a recent Supreme Court decision addressing the limited jurisdiction of bankruptcy courts, Defendants urge that *Stern* applies where the counterclaim in question is a matter of state law, rather than federal law. Further, Defendants contend that "any ruling by this Court on the identical claims asserted by plaintiffs here as those asserted in the bankruptcy proceedings would certainly have affected the process of ruling on DROR's proof of claim in bankruptcy and Thundervision's counterclaim, thereto, as any award to plaintiffs in this case would directly offset any claims and/or liabilities plaintiffs have asserted as shareholder and/or creditors of Thundervision within the bankruptcy proceedings."[91] Citing the Fifth Circuit's opinion *In re Matter of Wood*,[92] Defendants urge that Plaintiffs should have raised the claims pending in this matter in the bankruptcy proceeding:

---

[89] *Id.* at p. 7 (emphasis in original).

[90] *Id.* at p. 9.

[91] *Id.* at 10.

[92] 825 F.2d 90 (5th Cir. 1987).

The Fifth Circuit has held that as long as a matter is at least "related to" bankruptcy, subject matter jurisdiction exists. A matter is "related to" bankruptcy when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy," such that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [impact] the handling and administration of the bankruptcy estate." Therefore, the bankruptcy court could and did enter a final judgment on debtor's counterclaim and could have also entered same as to any core proceedings arising, therefrom. Defendants should not now be prejudiced by Plaintiffs' failure to raise said claims as core proceedings to the bankruptcy case.[93]

### III. Law and Analysis

*A. Standard on a Motion for New Trial*

Although Plaintiffs style their motion as a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, when a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, it is Federal Rule of Civil Procedure 54(b) that controls:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[94]

Thus, the Court will construe the pending motion as a Rule 54(b) motion.

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient"[95] However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[96]

---

[93]  Rec. Doc. 142, at p. 10–11.

[94]  Fed. R. Civ. Pro. R. 54(b)

[95]  *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[96]  *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993); 18B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2002)

The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[97] Such a motion "calls into question the correctness of a judgment,"[98] and courts have considerable discretion in deciding whether to grant such a motion.[99] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[100]  Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1)     the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)     the movant presents newly discovered or previously unavailable evidence;

(3)     the motion is necessary in order to prevent manifest injustice; or

(4)     the motion is justified by an intervening change in controlling law.[101]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[102]  Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[103]  "It is well

---

[97]  See, e.g., *Castrillo v. American Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[98]  *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[99]  *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[100]  *Id.* at 355-56.

[101]  *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[102]  *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[103]  *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[104] Furthermore, a court "will not consider an issue raised for the first time in a Motion for Reconsideration."[105] Such arguments are deemed to be waived.[106]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly,"[107] and the motion must "clearly establish" that reconsideration is warranted.[108] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[109]

## B. Whether the Claims of Higgins, Smith, and Wright Avenue, LLC Are Barred by Res Judicata

In analyzing whether Plaintiffs' claims are barred by *res judicata* the Court must consider the potential preclusive effect of the two prior proceedings—the bankruptcy proceeding and the state court proceeding. These prior matters are addressed in turn.

---

[104]  *Helena Labs Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[105]  *Lincoln General Ins. Co. v. De La Luz Garcia*, 501 F.3d 436, 442 (5th Cir. 2007) (quoting *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999)).

[106]  *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) (cited with approval in *Lincoln General Ins.*, 501 F.3d at 442)).

[107]  *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (citation omitted).

[108]  *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[109]  *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002); *see also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

### 1. Effect of the Prior Bankruptcy Proceeding

As explained in the Court's previous order, the potential preclusive effect of the bankruptcy proceeding is properly analyzed under federal law,[110] and the party asserting the bar of *res judicata* has the burden of showing its applicability.[111] In *Vines v. University of Louisiana at Monroe*,[112] the Fifth Circuit outlined the four requirements necessary to trigger *res judicata* under federal law and bar a subsequent suit:

> First, the parties in the later action must be identical to (or at least in privity with) the parties in the prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.[113]

Generally when engaging in *res judicata* analysis, the Fifth Circuit recognizes three instances in which privity will be found: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit."[114] However, the *res judicata* analysis involves a unique set of issues when the initial proceeding takes place before a non-Article III bankruptcy court, whose jurisdiction may depend on each party's specific identity as a debtor or

---

[110] *See* Rec. Doc. 80 at pp.18–19.

[111] *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule."); *see also Peckham v. Family Loan Co.*, 196 F.2d 838 (5th Cir. 1952); Wright et al., 18 *Fed. Prac. & Proc. Juris.* § 4405 (2d ed.).

[112] 398 F.3d 700 (5th Cir. 2005).

[113] *Id.* at 704-05.

[114] *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1267 (5th Cir. 1990).

creditor. As the Fifth Circuit explained in *Latham v. Wells Fargo Bank, N.A.*, "the preclusive effect of a bankruptcy decree must reflect the reality of its limited jurisdiction."[115]

In *Latham*, the plaintiff brought lender liability claims against various banks.[116] The district court found that plaintiff's claims were barred under the doctrine of *res judicata* because two corporations that the plaintiff controlled were co-borrowers on the loans and had settled their claims against the banks in earlier bankruptcy proceedings.[117] However, the Fifth Circuit reversed, holding that *res judicata* did not apply because plaintiff's claims were for "injuries he suffered personally in his capacity as a co-borrower" rather than "injuries suffered as a shareholder from wrongs inflicted on his corporations."[118] Relying on the principles articulated in the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*,[119] the Fifth Circuit reasoned that if plaintiff's "personal claims against the banks would not have presented a core proceeding" in the bankruptcy case, then "his personal interests could not have been properly placed before that court for decision."[120] In *Latham*, the plaintiff's claims were not core proceedings because they "would not invoke substantive rights provided by title 11, nor do they arise only in the context of bankruptcy proceedings."[121] The Fifth Circuit characterized the *Latham* plaintiff's state law claims and federal

---

[115]  896 F.2d at 983.

[116]  *Id.* at 980.

[117]  *Id.*

[118]  *Id.*

[119]  458 U.S. 50 (1982).

[120]  *Latham*, 896 F.2d at 984.

[121]  *Id.*

Bank Tying Act claims as "precisely the kinds of claims *Northern Pipeline* established Congress could not commit to the bankruptcy courts for adjudication."[122]

The Fifth Circuit also analyzed the particularities of *res judicata* in the context of bankruptcy proceedings in *Howell Hydrocarbons, Inc. v. Adams*.[123] In *Howell Hydrocarbons*, a seller of jet fuel brought an action against shareholders, officers, directors, and managing agents of a bankrupt buyer's parent corporation, alleging violations of the Racketeer Influenced and Corrupt Organizations Act.[124] The district court found that the plaintiff's claims were barred by *res judicata* based upon the prior order of the bankruptcy court confirming the reorganization plan, which included provisions regarding the buyer's trade debt to the seller.[125] However, the Fifth Circuit held that *res judicata* did not bar the claims.[126] It explained that "only if [plaintiff's] claims against the defendants personally would have constituted a core proceeding in [the] bankruptcy proceedings can we say that these claims should properly have been before that court."[127] Citing *Northern Pipeline*, the Court concluded that the RICO claims would not have been core proceedings because "[t]hey invoke a completely independent federal right," rather than a right provided by the Bankruptcy Code.

Taken together, *Latham* and *Howell Hydrocarbons* establish that *res judica* will not bar a party's personal claims unless those claims would have presented a "core proceeding" in the

---

[122] *Id.*

[123] 897 F.2d 183 (5th Cir. 1990).

[124] See *id.* at 186–88.

[125] *Id.* at 188.

[126] *Id.* at 190.

[127] *Id.* at 189.

bankruptcy case.[128] In order for a claim to be a core proceeding, it must invoke the substantive rights provided by title 11 or arise only in the context of bankruptcy proceedings.[129]

The adversary proceedings in the bankruptcy case dealt with core bankruptcy proceedings: DROR's proof of claim against Thundervision, and Thundervision's counterclaim against DROR.[130] As core proceedings, these claims invoked the substantive rights provided by title 11, namely Thundervision's discharge of any debt owed to DROR. In this case, however, Higgins, Smith, and Wright Avenue assert *personal* claims under the Computer Fraud and Abuse Act, the Wiretap Act, and Louisiana Civil Code Article 2315. These claims are not core claims, as they do not involve substantive rights provided by title 11, nor do they arise only in the context of bankruptcy proceedings. Like the RICO claim at issue *Howell Hydrocarbon*, Plaintiffs' claims involve "completely independent federal right[s]" as well as a state law right.

Defendants' argument that the pending case is distinguishable from *Latham* is unavailing. Although Defendants characterize Plaintiffs' claims as being for "injuries suffered by a plaintiff in his capacity as a shareholder from wrongs allegedly inflicted on his corporation,"[131] in fact, Plaintiffs

---

[128] *See Latham*, 896 F.2d at 984; *Howell Hydrocarbons*, 897 F.2d at 189. Additionally, the Court is cognizant of the Supreme Court's recent holding in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which further confirms that courts must consider constitutional questions when evaluating the potential preclusive effect of a bankruptcy court judgment. There, the Supreme Court explained that a bankruptcy court could only issue a final judgment if "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. The Supreme Court held that the bankruptcy court could not enter final judgment on the debtor's counterclaim for tortious interference, even though the claim fell within the 28 U.S.C. § 157 definition of a core proceeding, because the counterclaim was based on state law and did not affect the process of ruling on the creditor's proof of claim.

[129] *See Latham*, 896 F.2d at 984; *Howell Hydrocarbons*, 897 F.2d at 189–90; *see also The Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

[130] *See* 28 U.S.C. § 157(b)(2)(B) (identifying "allowance or disallowance of claims against the estate" as "core proceedings"); 28 U.S.C. § 157(b)(2)(C) (identifying "counterclaims by the estate against persons filing claims against the estate" as "core proceedings");  Rec. Doc. 43-7, *In re the Matter of Thundervision, LLC*, No. 09-11145A, Objection to Claim No. 4, entered June 1, 2009, at p. 1 (characterizing Thundervision's claims against DROR as "core").

[131] Rec. Doc. 142 at p. 3.

appear to allege personal claims. In their complaint, Plaintiffs state that: "The plaintiffs have suffered damages as a direct result of all defendants' *invasion of plaintiffs' privacy* as the result of the defendants' unauthorized access of their computer system, records and e-mails, including private business matters and strategies and privileged communications between plaintiffs and their attorneys."[132] In this manner, the basis for Plaintiffs' claims appears to be that Defendants accessed Plaintiffs' email and records and thus invaded Plaintiffs' privacy. Thus, like the plaintiff in *Latham*, Higgins, Smith, and Wright Avenue, LLC should be able to pursue their individual claims.

Looking to the underlying substance of Plaintiffs' claims, Defendants aver "plaintiffs' own statements as to their causes of action in this lawsuit support a finding that the injuries allegedly suffered by Smith, Higgins and Wright Avenue could only have been sustained in their capacities as shareholders and/or interest holders of Thundervision from wrongs allegedly inflicted on Thundervision."[133] Defendants' argument appears to concern whether Plaintiffs have alleged facts sufficient to state a claim for personal injuries under CFAA, the Wire Tap Act, and Louisiana Civil Code Article 2315. Whether Plaintiffs have sufficiently stated a cause of action is not before the Court at this time, and the Court need not undertake such analysis prior to deciding whether the claims, if properly asserted, are barred by *res judicata*.

Turning to Defendants' argument that the bankruptcy court could have adjudicated the claims pending in the above-captioned matter under its "related to" jurisdiction, the Court finds that this argument is also misplaced.[134] As *Latham* and *Howell* make clear, the possibility of "related to" jurisdiction is insufficient for the purposes of *res judicata*; the bankruptcy court's judgment will only

---

[132] Rec. Doc. 9, at ¶ 7.

[133] Rec. Doc. 142 at p. 4.

[134] *See* Rec. Doc. 142 at pp. 10–11.

have a preclusive effect over core claims.[135] Moreover, drawing upon *Stern v. Marshall*, the Fifth Circuit has cautioned against using 28 U.S.C. § 157's broad "related to" jurisdiction to litigate tradition Article III disputes in the bankruptcy courts: "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."[136]

The burden of showing that *res judicata* applies rests with Defendants.[137] Defendants have not demonstrated that *res judicata* applies here, especially given that the preclusive effect of a bankruptcy court judgment must reflect its limited jurisdiction. Specifically, Defendants have not shown that Plaintiffs' personal claims would have been core proceedings in the bankruptcy case. Therefore, the Court, in reconsidering its prior decision, finds that Plaintiffs' claims are not barred pursuant to the doctrine of *res judicata* because of the earlier litigation before the bankruptcy court. In making this finding, the Court does not evaluate whether Plaintiffs have alleged facts sufficient to establish a claim for personal damages. Whether Plaintiffs have satisfied their pleading requirements in this regard  and whether Plaintiffs are ultimately entitled to damages for injuries sustained in their personal capacities should not be collapsed into the *res judicata* analysis. Furthermore, given the analysis laid out in the Court's August 26, 2013 Order dismissing certain

---

[135] *See Latham*, 896 F.2d at 984; *Howell Hydrocarbons*, 897 F.2d at 189.

[136] *In re BP RE, L.P.*, 735 F.3d 279, 286 (5th Cir. 2013).

[137] *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule."); *see also Peckham v. Family Loan Co.*, 196 F.2d 838 (5th Cir. 1952); Wright et al., 18 *Fed. Prac. & Proc. Juris.* § 4405 (2d ed.).

claims on the grounds of prescription,[138] it may also be the case that some or all of the claims Higgins, Smith, and Wright Avenue, LLC against DROR and Mandelbaum will fail on that ground; however, the Court will not examine this issue *sua sponte*.

### 2. Effect of the Prior State Court Proceeding

Because the Court's November 30, 2012 order found that *res judicata* barred Plaintiffs' claims on the basis of the bankruptcy court proceeding, the Court did not extensively evaluate the preclusive effect, if any, of the Louisiana state court proceeding.[139] Because the Court has revised its determinations with respect to the *res judicata* effect of the bankruptcy court judgment, it is now necessary to conduct a full analyze of the state court matter.

As the Fifth Circuit explained in *Lafreniere Park Foundation v. Broussard*, to determine the preclusive effect of a prior Louisiana court judgment, if any, a federal court must apply Louisiana law.[140] The Louisiana doctrine of *res judicata* is articulated in Revised Statute § 13:4231, which provides:

> Except as otherwise provided by law, a valid final judgment is conclusive between the same parties, expect on appeal or other direct review to the following extent:
>
> (1)    If the judgment is in favor of the plaintiff, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2)    If the judgment is in favor of the defendant, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action of those causes of action. . . . [141]

---

[138]  Rec. Doc. 113.

[139]  *See* Rec. Doc. 80.

[140]  *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000).

[141]  La. Rev. Stat. § 13:4231.

In applying § 4231, courts are to utilize a five-part test, under which a state court judgment will bar a subsequent federal suit if:

    (1)     the judgment is valid;

    (2)     the judgment is final;

    (3)     the parties to the two actions are the same;

    (4)     the cause of action asserted in the federal suit existed at the time of the prior state court judgment; and

    (5)     the cause of action asserted in the federal suit arose out of the transaction or occurrence that was the subject matter of the state court litigation.[142]

The doctrine cannot be invoked unless "all its essential elements are present, and each necessary element must be established beyond all question."[143] "Any doubts concerning the application of the principle of *res judicata* must be resolved against its application."[144] Because § 4231 is modeled on the federal doctrine and the Restatement of Judgments, courts may consult federal *res judicata* jurisprudence for guidance when applying the Louisiana test.[145]

       In this case, the first two elements are clearly satisfied. For the purposes of *res judicata*, validity means that the prior judgment "must have been rendered by a court with jurisdiction over the subject matter and over the parties, and proper notice must have been given."[146] Neither the state court's jurisdiction nor the notice given to Smith, Higgins, and Wright Avenue, LLC is contested. Further, there is no debate as to whether the state court's decision was final.

---

[142] *Lafreniere Park Found.*, 221 F.3d at 809.

[143] *Kelty v. Brumfield*, 663 So. 2d 1210, 1215 (La. 1994).

[144] *Id.*

[145] *Lafreniere Park Found.*, 221 F.3d at 808.

[146] *Id.* (citing La. Rev. Stat. § 13:4231, cmt d).

With respect to the third element—identity of the parties—Smith, Higgins, Wright Avenue, and DROR were all parties in the state court suit. Mandelbaum was not a party; however, this does not end the inquiry. As is the case under the federal doctrine, the parties need not in fact actually be identical:

> [T]he preclusive effect of a judgment binds the parties to the action and nonparties who are deemed privies of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interest were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the part and the nonparty are so closely aligned.[147]

In its prior order, the Court explained, with reference to the federal doctrine, why Mandelbaum is properly considered in privity with DROR, as its president and sole member.[148]  Because the Fifth Circuit has instructed that courts may consult federal *res judicata* jurisprudence for guidance on the Louisiana doctrine, and because Louisiana courts have adopted a view of privity in line with the federal doctrine, for the reasons articulated in the Court's November 20, 2012 order, the Court again finds that the identity of the parties element is satisfied.

Turning to the fourth element, the Court finds that the cause of action asserted in the current federal suit existed at the time of the prior state court judgment. Indeed, at the time of the state court judgment, Thundervision had already raised claims involving email hacking before the bankruptcy court.

Finally, the Court must evaluate whether the cause of action asserted in the current federal suit arose out of the same transaction or occurrence that was the subject matter of the state court litigation. Under Louisiana law, what constitutes a transaction or occurrence is to be determined on

---

[147] *Bandaries v. Cassidy*, 2011-1267 (La. App. 3 Cir. 3/7/12), 86 So. 3d 125, 130; *see also Hudson v. City of Bossier*, 33,620 (La. App. 2 Cir. 8/25/00), 766 So. 2d 738, *writ denied*, 00-2687 (La. 11/27/00), 775 So. 2d 450.

[148] *See Rec*. Doc. 80 at pp. 21–22.

a case-by-case basis,[149] and Louisiana appellate courts have articulated the meaning of "transaction or occurrence" in various ways. For example, in *Hy-Octane Investments, Ltd. v.G&B Oil Products, Inc.*, the Third Circuit stated that "[a]ll logically related events entitling a person to institute legal action against another generally are regarded as comprising a 'transaction or occurrence.'"[150] The First Circuit utilized a somewhat different definition in *North American Treatment Systems, Inc. v. Scottsdale Inurance. Co.*, explaining that "the factual circumstances forming the subject matter from which a legal dispute arises may be due either to an obligation or relationship fashioned by the will or agreement of the parties (a transaction or contract), an unexpected or isolated event (or series of events) which creates an obligation or relationship (an occurrence such as an accident), or perhaps a combination of both."[151]

In evaluating this prong of the *res judicata* test, the Fifth Circuit Court of Appeal of Louisiana has drawn from the federal analysis of a "transaction or occurrence" in the compulsory counterclaim context,[152] looking to: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (3) whether there is any logical relationship between the claim and the counterclaim.[153]

---

[149] *Hy-Octane Invs., Ltd.. v. G&B Oil Prods., Inc.*, 97-28 (La. App. 3 Cir. 10/29/97), 702 So. 2d 1057, 1060; *see also*

[150] *Id.*

[151] *N. Am. Treatment Sys., Inc. v. Scottsdale Insurance Co.*, 2005-0081 (La. App. 1 Cir. 8/23/06), 943 So. 2d 429, 440.

[152] *Durkin v. Quest, Inc.*, 98-939 (La. App. 5 Cir. 12/29/98), 724 So. 2d 868, 879–71 (citing *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053 (5th Cir. 1992)).

[153] *Id.*

Although Defendants assert that "Smith, Higgin [sic.] and Wright Avenue had a full opportunity to assert any such alleged [email access] claims in the matter before the 24th Judicial District Court for the Parish of Jefferson,"[154] Defendants have not explained how the claims pending in this case involve the same "transaction or occurrence" as the state court claims. Upon reviewing the record and the briefs in the pending matter, the Court notes that the state court proceedings and the pending claims appear to not be logically related events, to concern different sets of facts, and to raise different issues of law. After the bankruptcy proceedings were complete, the state court matter resumed to address, as Defendants explain, "claims asserted against Mr. Smith, Mr. Higgins, and Wright Avenue by DROR . . . based on guarantees issued by said parties on the accounts of Thundervision as claimed in the Bankruptcy proceeding."[155] The state court granted Summary Judgment for DROR, finding that Smith, Higgins, and Wright Avenue were guarantors of the printing contract and could be held liable for unpaid invoices.[156] In making this determination, the state court would have examined printing contracts signed on February 5, 2004 and August or September 2006,[157] and would have applied principles of contract law. In contrast, the current matter looks at email access between February 1, 2007 and March 14, 2007,[158] and deals with tort law as well as federal computer fraud and wiretap statutes.

Defendants DROR and Mandelbaum, as the parties invoking *res judicata*, must establish all five elements of the doctrine "beyond all question," and this Court must resolve any doubts against

---

[154] Rec. Doc. 134, at p. 7.

[155] Rec. Doc. 50, at p. 4; *see also* Rec. Doc 43-1, at p. 6.

[156] See Rec. Doc. 43-1 at p. 6; Rec. Doc. 46 at p. 5.

[157] *In re the Matter of Thundervision, LLC*, No. 09-11145A, Adversary No. 09-1063A, Memorandum Opinion, entered June 1, 2010 (Magner, B.J.), at pp. 4–7.

[158] Rec. Doc.

the application of *res judicata*. Therefore, upon reconsidering its earlier Order, the Court finds that Defendants have not established that the claims in the above-captioned case involve the same "transaction or occurrence" as the claims adjudicated in the state court proceeding, and that *res judicata* does not bar Plaintiffs' claims.

### C. Whether Wallace Has Demonstrated Entitlement to Relief

In the motion for reconsideration, Plaintiffs argue that Wallace has pled facts sufficient to show that "defendants' *illegal* action caused, or at the very least contributed, to the bankruptcy of Thundervision and ultimately causing [sic] it to be defunct."[159] "This, [Wallace] argues, caused her to lose wages as a result of the illegal action taken by the defendants."[160] This argument that Defendants' action resulted in lost wages to Wallace was not presented to the Court in Plaintiffs' opposition to Defendants' Motion to Dismiss. In its November 30, 2012 order, the Court noted that Plaintiffs' only response to Defendants' challenge to Wallace's claim was that "[m]any relevant facts have been discovered by the filing of the two other suits. Factual information learned from the other suits made it necessary to include Wallace in this suit."[161] As explained above, a court "will not consider an issue raised for the first time in a Motion for Reconsideration."[162] Such arguments are deemed to be waived.[163] Therefore, reconsideration with respect to Wallace's claims is denied.

---

[159] Rec. Doc. 125-1 at p. 9.

[160] *Id.*

[161] Rec. Doc. 80 at p. 26 (quoting Rec. Doc. 46 at p. 15).

[162] *Lincoln General Ins.* 501 F.3d at 442(quoting *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999)).

[163] *Mungo,* 355 F.3d at 978 (cited with approval in *Lincoln General Ins.*, 501 F.3d at 442)).

## IV. Conclusion

After examining the prior bankruptcy proceeding and the prior state court proceeding, the Court finds that Plaintiffs' claims are not barred pursuant to the doctrine of *res judicata*. However, with respect to Wallace's claims, Wallace failed to articulate the basis for her entitlement to relief in the Complaint, the Amended Complaint, or Plaintiffs' opposition to Defendants' initial motion. The Court will not consider new arguments here, and thus reconsideration is unwarranted.

The Court notes that its August 26, 2013 order may have implications for claims reinstated by this order. However, as those claims were not pending at the time of the August 26, 2013 Order, the Court declines to extend that order to the reinstated claims *sua sponte*. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that with respect to the Court's ruling that Higgins's, Smith's and Wright Avenue, LLC's claims are barred by *res judicata*, reconsideration is **GRANTED** and these claims are reinstated;

**IT IS FURTHER ORDERED** that with respect to Wallace's claims, reconsideration is **DENIED** and these claims remain dismissed with prejudice.

**NEW ORLEANS, LOUISIANA**, this 2nd  day of January, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**